JODY JAMES FARMS, JV, Appellant

v.

THE ALTMAN GROUP, INC. and Laurie Diaz, Appellees

No. 07-15-00060-CV

Court of Appeals of Texas, Amarillo.

October 17, 2016

Rehearing Overruled December 13, 2016

Anna McKim, J. Paul Manning, for The Altman Group, Inc.

J. Paul Manning, for Diaz, Laurie.

Jody D. Jenkins, for Jody James Farms, JV.

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

## OPINION

James T. Campbell, Justice

Appellant Jody James Farms, JV ("JJF") appeals the trial court's order con-

firming an arbitration award in favor of appellees The Altman Group, Inc. and Laurie Diaz ("Altman and Diaz" or "appellees"). We will affirm the court's order.

## Background

In 2010, JJF purchased a Crop Revenue Coverage Insurance Policy from Rain & Hail, L.L.C. JJF purchased the insurance through The Altman Group, an insurance agency. Diaz is a registered insurance agent employed by The Altman Group.

The policy was one issued for the 2010 crop year under the authority of section 508(h) of the Federal Crop Insurance Act,[1] and reinsured by the Federal Crop Insurance Corporation (FCIC).[2] The policy contains, within its "basic provisions," a section 20, entitled "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review." Section 20 is lengthy, and provides for resolution, by various means, of various categories of disputes. Some disputes are narrowly described, such as that given in section 20(d) for reconsideration of determinations made by the insurer or FCIC regarding whether the insured has "used a good farming prac-

tice . . . ." Others, like the provision the parties in this case discuss, are described in broad terms.[3] Section 20(a) of the policy reads in part:

> If [the insured] and [the insurer] fail to agree on any determination made by [the insurer] except those specified in Section 20(d), the disagreement may be resolved through mediation in accordance with Section 20(g). If resolution cannot be reached through mediation, or [the insured] and [the insurer] do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association . . . .[4]

Subsection 20(a)(1) reads in part:

> All disputes involving determinations made by [the insurer], except those specified in section 20(d), are subject to mediation or arbitration.[5]

In November of 2010, JJF incurred a loss on an insured grain sorghum crop. According to JJF, it notified Diaz of the loss in a telephone conversation. The claim was not formally submitted to Rain & Hail until some time later. Rain & Hail eventu-

---

**1.** 7 U.S.C. § 1508(h); *see generally Olsen v. United States,* 546 F.Supp.2d 1122 (E.D. Wash. 2008), *aff'd,* 334 Fed.Appx. 834 (9th Cir. 2009); *Greenwood v. Rural Cmty. Ins. Servs.,* No. 2:02CV00047, 2005 U.S. Dist. LEXIS 29331 (E.D. Mo. Nov. 22, 2005); 7 C.F.R. § 457.2 (2004). *See Wiley v. Glickman,* No. A3–99–32, 1999 WL 33283312, 1999 U.S. Dist. LEXIS 20278 (D. N.D. Sept. 3, 1999) (reciting history of crop revenue coverage policies).

**2.** The FCIC is managed by the United States Department of Agriculture's Risk Management Agency. *See* 7 U.S.C. § 6933 (creating USDA's Office of Risk Management).

**3.** The policy's section 20 is much like, though not identical to, the section 20 (for reinsured policies) contained in the policy form set out in 7 C.F.R. § 457.8.

**4.** Section 20(g) describes the requirements and procedures for mediation.

**5.** Subsection 20(a)(1) continues with language requiring, however, that if a dispute "in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure," parties must obtain "an interpretation from FCIC in accordance with 7 C.F.R. part 400, subpart X or such other procedure as established by FCIC." The FCIC interpretation procedure was not initiated in this case. JJF's brief cites the provision in its argument that the policy's arbitration provisions are not suited to its claims against Altman and Diaz, but the parties do not otherwise discuss its potential application.

ally denied the claim, in part because it was not timely submitted.[6]

After Rain & Hail denied JJF's claim, their disagreement over its determination was arbitrated under the policy. The arbitrator upheld Rain & Hail's denial of the claim.[7]

Thereafter, JJF filed suit against Altman and Diaz asserting they breached a fiduciary duty and violated the Texas Deceptive Trade Practices Act when they failed to submit the claim in a timely fashion. Altman and Diaz sought an order compelling arbitration under the Federal Arbitration Act[8] and, over JJF's objection, the trial court compelled arbitration of its causes of action. The arbitrator found in favor of Altman and Diaz and the trial court entered an order confirming and enforcing that finding, thus ordering that JJF take nothing. From that order, JJF now appeals.

## Analysis

■ An arbitration award under the FAA must be confirmed unless it is vacated, modified or corrected as prescribed in sections 10 and 11 of the FAA. 9 U.S.C. §§ 9–11; *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S.Ct. 1396, 170

L.Ed.2d 254 (2008); *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011). One of the grounds on which an award may be vacated is that the arbitrator exceeded the arbitrator's powers. 9 U.S.C. § 10(a)(4). A party moving to vacate an award has the burden of proof. *Lummus Global Amazonas, S.A. v. Aguaytia Energy Del Peru, S.R. Ltda.*, 256 F.Supp.2d 594, 604 (S.D. Tex. 2002); *Petrobras Am., Inc. v. Astra Oil Trading NV,* No. 01–11–00073–CV, 2012 WL 1068311 at *16, 2012 Tex. App. LEXIS 2458 at *46 (Tex. App.–Houston [1st Dist.] March 29, 2012, no pet.) (mem. op.).

■ JJF contends on appeal the trial court erred by enforcing the arbitrator's award because the arbitrator exceeded his authority. It argues there was no agreement to arbitrate between JJF and Altman and Diaz; and in any event its claims are outside the scope of the policy's arbitration agreement. *See In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding) (party seeking to compel arbitration under FAA must establish there is a valid arbitration clause and claims in dispute fall within that agreement's scope) (*citing In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005)).[9]

---

6. JJF's brief contends Rain & Hail denied JJF's claim because it determined the claim was untimely submitted. The statement is true, but not complete. Rain & Hail's letter explaining its denial of the claim detailed three reasons. It cited JJF's failure to submit a timely notice of loss, but it said also JJF's manner of storing the harvested grain sorghum precluded adjustment of the loss. The letter quoted from FCIC's loss adjustment manual and concluded, "Based on the claim adjustment procedures spelled out above, your grain sorghum claim must be denied because without our measurements of the farm-stored production, you do not have the required verifiable records for the stored grain." The letter also stated Rain & Hail's belief that JJF "intentionally misrepresented" the planting dates of its grain sorghum crop.

Citing the policy's "concealment, misrepresentation or fraud" provisions, Rain & Hail declared the policy coverage for grain sorghum for the 2010 crop year to be void.

7. The arbitration award recited the arbitrator's agreement with Rain & Hail on the claim notice issue and on its contention that JJF's commingling of stored grain precluded a "presentable loss."

8. *See* 9 U.S.C. § 1 *et seq.*

9. By its over-arching sole appellate issue, JJF questions "whether a non-party to an arbitration agreement can compel arbitration of claims that are not within the scope of the arbitration agreement." JJF's argument encompasses both the existence of an arbitra-

In cases in which a party resists arbitration, "it matters whether the party resisting arbitration is a signatory or not." *Merrill Lynch Investment Mgrs. v. Optibase, Ltd.,* 337 F.3d 125, 131 (2nd Cir. 2003); *see Roe v. Ladymon,* 318 S.W.3d 502, 515 (Tex. App.–Dallas 2010, no pet.); *see also DK Joint Venture 1 v. Weyand,* 649 F.3d 310, 316–17 (5th Cir. 2011); *Elgohary v. Herrera,* 405 S.W.3d 785, 791 (Tex. App.–Houston [1st Dist.] 2013, no pet.). Here JJF, the party resisting arbitration, was a party to the policy containing the broad requirement that "[a]ll disputes involving determinations made by [Rain & Hail]," with an exception not relevant here, were subject to arbitration. Altman and Diaz, though not parties to the policy, sought to enforce JJF's agreement to arbitrate.[10]

After the trial court referred JJF's claims against Altman and Diaz to arbitration, JJF filed with the arbitrator a motion to dismiss the arbitration. Among other contentions, the motion argued the claims were not arbitrable because appellees were not parties to the policy, and because JJF's claims against them were entirely separate from its claim against Rain & Hail under the policy and in fact did not even arise until JJF's claim against Rain & Hail was finally resolved against JJF. The arbitrator denied JJF's motion to dismiss by written order.

In the trial court, JJF's response to appellees' petition to confirm the arbitra-

tion award also addressed the arbitrator's authority, noting that under American Arbitration Association rules, "it is the arbitrator's responsibility to 'rule on his ... jurisdiction, including any objections with respect to the existence ... of the arbitration agreement or to the arbitrability of any claim.' "[11]

"Under the FAA, absent unmistakable evidence that the parties intended the contrary, it is the courts rather than arbitrators that must decide 'gateway matters' such as whether a valid arbitration agreement exists." *In re Weekley Homes, L.P.,* 180 S.W.3d 127 (Tex. 2005) (orig. proceeding). We review the issue in the manner set out in *First Options. First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed. 2d 985 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute ..., so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter") (internal citation omitted; italics in original); *see In re Weekley Homes,* 180 S.W.3d at 130–31 (determining whether nonparty must arbitrate, Texas courts "apply state law while endeavoring to keep it as consistent as possible with federal law"). In this instance, the contract is one promulgated by the FCIC pursuant to its statutory authorization. *See* 7 U.S.C. § 1508(h) (pro-

---

tion agreement between these parties and the scope of the policy's arbitration provision.

**10.** "A person who has agreed to arbitrate disputes with one party may in some cases be required to arbitrate related disputes with others." *Meyer v. WMCO–GP, LLC,* 211 S.W.3d 302, 304 (Tex. 2006)

**11.** JJF's response to appellees' motion to confirm the award also constituted its motion to vacate the award. JJF cited rule R-7 of the

AAA's Commercial Arbitration Rules (2010), *available at* https://www.adr.org. JJF also quoted from rule R-8 of the same rules, stating in its response, "The arbitrator has the power 'to determine the existence or validity of a contract of which an arbitration clause forms a part.' " Commercial Arbitration Rules (2010), *available at* https://www.adr.org. JJF went on to argue the merits of its contention its claims against Altman and Diaz were not arbitrable.

viding for review and approval of policies by FCIC).

Federal courts are largely in agreement that incorporation of the AAA rules containing language like that JJF quoted to the trial court constitutes clear and unmistakable evidence that the parties to the arbitration agreement "agreed to arbitrate arbitrability." *See Oracle Am., Inc. v. Myriad Group, A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("virtually every circuit to have considered the issue" has so held); *see also Chesapeake Appalachia, LLC v. Scout Petr., LLC*, 809 F.3d 746 (3rd Cir. 2016) (quoting "virtually every circuit" language); *Petrofac, Inc. v. DynMcDermott Petr. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012) (agreeing with "most of our sister circuits that the express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372–73 (Fed. Cir. 2006); *Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332–33 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2nd Cir. 2005).

In *Haddock v. Quinn*, 287 S.W.3d 158, 172 (Tex. App.–Fort Worth 2009, orig. proceeding),[12] the court recognized the "majority view," consistent with the holdings of the federal circuit courts, but found that a "general reference" to the AAA rules in

the arbitration agreement did not clearly and unmistakably indicate the parties' intent to submit issues of arbitrability to the arbitrator in that case. *See also Burlington Res. Oil & Gas Co. L.P. v. San Juan Basin Royalty Trust*, 249 S.W.3d 34, 40 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (also finding agreement's reference to AAA rules did not provide clear and unmistakable evidence of intention to submit arbitrability issues to arbitrator).

We find *Haddock* distinguishable from our present case. The arbitrability issue there concerned the waiver of the right to arbitration through inconsistent litigation conduct, 287 S.W.3d at 170, and the court appropriately relied primarily on waiver cases. *Id.* at 173–74. And the court noted that rule 7(a) of the AAA rules, on which the party urging arbitration relied, did not exist at the time the arbitration agreement was added to the parties' contract. *Id.* at 175. Similarly, the court in *Burlington Resources* found the agreement there limited arbitration to specifically identified audit disputes, and did not contain "a clear and unmistakable indication that the parties authorized an arbitrator to decide the arbitrability of claims or amounts not specifically identified" in the agreement, notwithstanding its reference to the AAA rules. 249 S.W.3d at 41.[13]

We will apply the majority view to this federal crop insurance policy,[14] and thus

12. In its opinion, the court addressed a consolidated interlocutory appeal and mandamus proceeding.

13. The courts in *Haddock*, 287 S.W.3d at 174–75, and *Burlington Resources*, 249 S.W.3d at 41, also considered language in each arbitration agreement stating that its terms controlled over any inconsistent provision of the AAA rules as indicating the parties did not clearly and unmistakably agree to allow the arbitrator to determine questions of arbitrability. Similar language is present in section

20(f) of JJF's crop insurance policy, but we do not consider its presence determinative of the parties' intention regarding arbitrability.

14. Among the policy's basic provisions also is its section 36, entitled "Applicability of State and Local Statutes." That section provides:

If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this

find its incorporation of the AAA rules[15] constitutes clear and unmistakable evidence the parties to the policy intended the arbitrator to decide whether JJF's agreement to arbitrate is binding on it as against its effort to litigate its claims against Altman and Diaz in court. *Petrofac*, 687 F.3d at 675; *In re Weekley Homes*, 180 S.W.3d at 130–31.[16] In its motion to dismiss the arbitration, JJF contended both that it had no agreement to arbitrate with Altman and Diaz, and that its claims against them were outside the scope of the policy's arbitration agreement. As noted, the arbitrator denied JJF's motion by written order.

JJF's brief on appeal contends the arbitrator exceeded his authority "by entering an award where no agreement to arbitrate existed and the scope of the arbitration agreement did not cover the disputes." JJF gives no other reason for its assertion the arbitrator exceeded his authority. Because we conclude JJF agreed in the policy that an arbitrator would have authority to determine the question of arbitrability, the arbitrator did not exceed his authority by resolving the question contrary to JJF's position. And, under the narrow and deferential review standard applied to arbitration awards, JJF's arguments give us no basis to conclude the arbitrator acted outside his powers in his resolution of the merits of the issues presented to him, whether issues of arbitrability or those relating to appellees' asserted liability to JJF. *See Forsythe Int'l, S.A. v. Gibbs Oil Co.*, 915 F.2d 1017, 1020 (5th Cir. 1990); *Petrobras*, 2012 WL 1068311 at *11–12,

*16, 2012 Tex. App. LEXIS 2458 at *30–31, *46 (standard of review of awards under FAA). The trial court did not err by affirming the arbitration award over JJF's contrary argument.

For the reasons discussed, we overrule JJF's appellate issue and affirm the trial court's judgment.

---

· policy, and the applicable regulations do not apply to this policy.

**15.** *See* Risk Management Agency Final Agency Determination FAD-126, Nov. 2, 2010, *available* at http://www.rma.usda.gov/regs/533/2010.html. (2008 crop year; generally addressing application of AAA rules incorporated by reference into policy).

**16.** We do not suggest that JJF's act of filing its motion to dismiss with the arbitrator and thus obtaining the arbitrator's ruling was itself an indication of its willingness to arbitrate the question. *See First Options v. Kaplan*, 514 U.S. 938, 946, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).