# IN THE SUPREME COURT OF TEXAS

══════════

No. 17-0062

══════════

JODY JAMES FARMS, JV, PETITIONER

v.

THE ALTMAN GROUP, INC. AND LAURIE DIAZ, RESPONDENTS

══════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

══════════════════════════

**Argued March 20, 2018**

JUSTICE GUZMAN delivered the opinion of the Court.

JUSTICE JOHNSON did not participate in the decision.

Arbitration is a creature of contract between consenting parties.[1]  Nevertheless, as may be required by principles of contract law and agency,[2] a person who has agreed to arbitrate disputes with one party may be required to arbitrate related disputes with non-parties.[3]  This, however, is not one of those cases.

Determining whether a claim involving a non-signatory must be arbitrated is a gateway matter for the trial court, not the arbitrator, which means the determination is reviewed de novo

---

[1] *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989).

[2] *See, e.g., In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).

[3] *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 304 (Tex. 2006).

rather than with the deference that must be accorded to arbitrators. Applying the appropriate standard of review, we hold the lower courts erroneously required a signatory to arbitrate its non-contractual claims against non-signatories. We therefore vacate the arbitrator's take-nothing award and remand the case to the trial court for further proceedings.

## I. Background

Jody James Farms, JV purchased a Crop Revenue Coverage Insurance Policy from Rain & Hail, LLC, through the Altman Group, an independent insurance agency. The insurance policy, which was reinsured by the Federal Crop Insurance Corporation (FCIC) under the authority of the Federal Crop Insurance Act,[4] contains an arbitration clause in section 20(a):

> If you and we fail to agree on any determination made by us except those specified in section 20(d), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA), except as provided in sections 20(c) and (f), and unless rules are established by FCIC for this purpose. Any mediator or arbitrator with a familial, financial or other business relationship to you or us, or our agent or loss adjuster, is disqualified from hearing the dispute.[5]

The policy defines "us" and "we" as referring to the insurer (Rain & Hail) and "you" as referring to the named insured (Jody James). Neither the Altman Group nor any of its employees is expressly named in the policy, and neither the Altman Group nor any of its employees signed the agreement.

---

[4] *See* 7 U.S.C. § 1508(h).

[5] Section 20(c) establishes the binding nature of arbitration, subject to judicial review. Section 20(d) governs certain disagreements involving the FCIC. And section 20(f) explains how to resolve conflicts between the contract and other laws.

This dispute follows Rain & Hail's denial of coverage for a grain sorghum crop loss Jody James suffered. Though Jody James claims it promptly called an Altman Group agent, Laurie Diaz, to report the loss, Rain & Hail denied the claim on several bases, including that Jody James "failed to provide a timely notice of damage which has resulted in [Rain & Hail's] inability to make necessary and required loss determinations for indemnity under your . . . policy."

Jody James disagreed with Rain & Hail's coverage determination, so the parties arbitrated the dispute as required by the insurance policy. Jody James lost. The arbitrator agreed with Rain & Hail that Jody James did not "timely present[] notice of its claim in accordance with the provisions of the crop insurance policy" and, further, "did not state a presentable loss" because crops from performing and non-performing farm units were commingled.

Based on the adverse arbitration ruling, Jody James sued the Altman Group and Diaz (collectively, the Agency) for breach of fiduciary duty and deceptive-trade practices.[6] Jody James asserts the Agency's failure to timely submit the crop-loss claim resulted in denial of coverage and a $68,000 pecuniary loss. Jody James seeks damages equal to the amount of the loss, plus attorney's fees and interest.

The Agency moved to compel arbitration under the insurance policy, which Jody James opposed and the trial court granted. Following an unsuccessful motion for reconsideration, the case proceeded to arbitration where Jody James continued to assert its right to proceed in court against the Agency, a non-signatory to the arbitration agreement. The arbitrator resolved that issue and the merits of the dispute in the Agency's favor, issuing a take-nothing arbitration award.

---

[6] *See* TEX. BUS. & COMM. CODE §§ 17.41-.506.

3

The Agency asked the trial court to confirm and enforce the arbitrator's award, while Jody James moved to vacate it, again asserting that no valid arbitration agreement exists between the parties. The trial court's final judgment confirmed the award, denied Jody James's motion, and denied the Agency's request for attorney's fees. Applying a deferential standard of review to the arbitrator's determinations, the court of appeals affirmed.[7]

We granted Jody James's petition for review, which challenges the arbitrator's authority to determine whether a non-signatory can compel a signatory to arbitrate.

## II. Discussion

Jody James and the Agency disagree about (1) whether the Agency is liable for Jody James's loss; (2) whether they agreed to arbitrate the merits of that issue; and (3) whether the trial court or the arbitrator should decide whether they agreed to arbitrate the merits. The third matter—who answers the question of arbitrability—is the primary focus of this appeal. Jody James asserts that the trial court must determine, as a threshold matter, whether an arbitration agreement exists between it and the Agency. The Agency argues it makes no difference who actually holds the power to determine arbitrability, because both the trial court and the arbitrator concluded Jody James must arbitrate.

We disagree with the Agency. Who may properly adjudicate arbitrability is critical to ascertaining the appropriate standard of review. A trial court's arbitrability determinations are reviewed de novo,[8] while an arbitrator's determinations are entitled to deference.[9] Under the

---

[7] 506 S.W.3d 595, 600 (2016).

[8] *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

[9] *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

4

Federal Arbitration Act, an arbitration award must be confirmed except in extremely limited circumstances, such as corruption, fraud, undue means, evident partiality, and lack of authority.[10] The answer to the third question is thus significant and ultimately dispositive of this appeal, because it controls the standard of review we apply in evaluating the arbitrator's authority.

### A. Standard of Review

Whether parties have agreed to arbitrate is a gateway matter ordinarily committed to the trial court[11] and controlled by state law governing "the validity, revocability, and enforceability of contracts generally."[12] Parties can, however, agree to arbitrate arbitrability. Arbitration is a matter of contract, and that which the parties agree must be arbitrated shall be arbitrated.[13] A presumption favors adjudication of arbitrability by the courts absent clear and unmistakable evidence of the parties' intent to submit that matter to arbitration.[14] The unmistakable clarity standard follows "the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration" and protects unwilling parties from compelled arbitration of matters they reasonably expected a judge, not an arbitrator, would decide.[15]

The court of appeals held that an arbitration agreement incorporating the American Arbitration Association (AAA) rules evinces clear and unmistakable intent to arbitrate arbitrability because the AAA rules declare that an "arbitrator shall have the power to rule on his or her own

---

[10] 9 U.S.C. § 10.

[11] *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011).

[12] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009) (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)).

[13] *First Options*, 514 U.S. at 943.

[14] *Id.* at 944; *see* 9 U.S.C. § 4 (the court shall order the parties to arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue").

[15] *First Options*, 514 U.S. at 945.

jurisdiction, including any objections with respect to the existence . . . of the arbitration agreement or to the arbitrability of any claim or counterclaim."[16] Jody James and Rain & Hail's arbitration agreement expressly incorporates the AAA rules, so the court of appeals applied a "narrow and deferential review" to the arbitrator's determination that Jody James's claims against the Agency were arbitrable.[17]

While such deference may be the consequence of incorporating the AAA rules in disputes between signatories to an arbitration agreement,[18] which we need not decide, the analysis is necessarily different when a dispute arises between a party to the arbitration agreement and a non-signatory. As to that matter, Texas courts differ about whether an arbitration agreement's mere incorporation of the AAA rules shows clear intent to arbitrate arbitrability.[19] We hold it does not. Even when the party resisting arbitration is a signatory to an arbitration agreement, questions

---

[16] 506 S.W.3d 595, 599 (2016) (citing *Chesapeake Appalachia, LLC v. Scout Petrol., LLC*, 809 F.3d 746, 763 (3d Cir. 2016); *Oracle Am., Inc. v. Myriad Grp., A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013); *Petrofac, Inc. v. DynMcDermott Petrol. Ops. Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1372-73 (Fed. Cir. 2006); *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-33 (11th Cir. 2005); *Contec Corp. v. Remote Sol. Co.*, 398 F.3d 205, 208 (2d Cir. 2005)); *see also* AM. ARBITRATION ASS'N COMMERCIAL ARBITRATION RULES R-7(a), (b) (2017). Amendments to the AAA rules since this dispute arose are not germane to its disposition. Accordingly, we cite the current rules for convenience.

[17] 506 S.W.3d at 599-600.

[18] *See Oracle*, 724 F.3d at 1071 (addressing an arbitration clause in a license agreement signed by both parties in the dispute); *Petrofac*, 687 F.3d at 675 ("[T]he parties expressly incorporated into their arbitration agreement the AAA rules."); *Fallo*, 559 F.3d at 876 (reviewing an arbitration agreement between plaintiff students and defendant school); *Qualcomm*, 466 F.3d 1368, 1372-73 (reviewing an agreement between appellant and appellees); *Terminix*, 432 F.3d at 1332-33 (same); *c.f. Contec*, 398 F.3d at 207 (reviewing an arbitration clause in Agreement signed by predecessor corporations of the plaintiff and defendant).

[19] *Compare Jody James Farms*, 506 S.W.3d at 599-600 (finding clear and unmistakable evidence), *and Rent-A-Ctr. Tex., L.P. v. Bell*, No. 09-16-00085-CV, 2016 WL 4499093, at *4 (Tex. App.—Beaumont Aug. 25, 2016, no pet.) (mem. op.) (finding clear and unmistakable evidence "to delegate gateway issues of arbitrability to the arbitrator, including the arbitrability of David's claim even though he is a non-signatory"), *with Leshin v. Oliva*, No. 04-14-00657-CV, 2015 WL 4554333, at *6 (Tex. App.—San Antonio July 29, 2015, no pet.) (mem. op.) (finding no clear and unmistakable evidence to arbitrate arbitrability in dispute involving a non-signatory), *and Elgohary v. Herrera*, 405 S.W.3d 785, 791-92 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (same), *and Roe v. Ladymon*, 318 S.W.3d 502, 517 (Tex. App.—Dallas 2010, no pet.) (same).

6

related to the existence of an arbitration agreement with a non-signatory are for the court, not the arbitrator.

The involvement of a non-signatory is an important distinction because a party cannot be forced to arbitrate absent a binding agreement to do so.[20] The question is not whether Jody James agreed to arbitrate with someone, but whether a binding arbitration agreement exists between Jody James and the Agency. What might seem like a chicken-and-egg problem is resolved by application of the presumption favoring a judicial determination.[21] A contract that is silent on a matter cannot speak to that matter with unmistakable clarity, so an agreement silent about arbitrating claims against non-signatories does not unmistakably mandate arbitration of arbitrability in such cases.[22]

To the extent Jody James and Rain & Hail's agreement expressed any intent to arbitrate arbitrability, it did so only with respect to one another. Jody James's agreement with Rain & Hail requires disagreements to "be resolved through arbitration in accordance with the rules of the [AAA]" only "[i]f [Jody James] and [Rain & Hail] fail to agree on any determination made by [Rain & Hail]." The insurance policy directly incorporates the AAA rules only for these disputes, not for disputes between Jody James and unspecified third parties. The contract also does not "expressly provide[] that certain non-signatories are considered parties" or otherwise expressly

---

[20] *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.").

[21] If an arbitrator must determine whether a valid arbitration agreement exists as to the parties before it, a conundrum arises: "[A]n arbitrator would be put in the position of deciding whether he was authorized to decide the parties' dispute, concluding either that he was not authorized, a logical circularity, or that he was, and raising himself by his own bootstraps." *In re Morgan Stanley & Co., Inc.*, 293 S.W.3d 182, 193 (Tex. 2009) (Hecht, J., dissenting). The presumption favoring a judicial determination, outlined in *First Options*, resolves this conundrum. By requiring clear and unmistakable evidence before an arbitrator may decide the question of arbitrability, the arbitrator is empowered by something more than "his own bootstraps."

[22] *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

extend the contract's benefits to third parties.[23] And no agreement between Jody James and the Agency incorporates the AAA rules as to disputes between them.[24]

Given the absence of clear and unmistakable evidence that Jody James agreed to arbitrate arbitrability in disputes with non-signatories, compelled arbitration cannot precede a judicial determination that an agreement to arbitrate exists. The trial court was therefore charged with determining whether a valid agreement to arbitrate exists between Jody James and the Agency before any issue may be referred to arbitration. We review the resolution of that question de novo, because arbitrators lack authority to resolve a dispute absent a valid arbitration agreement.[25]

**B. Analysis**

Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms.[26] Courts have also articulated six scenarios in which arbitration with non-signatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary.[27] The Agency argues the insurance policy's language mandates arbitration here and, alternatively, that agency,

---

[23] *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011).

[24] *See Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 921 F. Supp. 2d 685, 693 (S.D. Tex. 2013).

[25] 9 U.S.C. § 10 (explaining that courts may vacate arbitration awards "where the arbitrators exceeded their powers"); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("[A]n arbitrator derives his or her powers from the parties' agreement.").

[26] *Rubiola*, 334 S.W.3d at 224 (quoting *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 355, 358 (5th Cir. 2003)).

[27] *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

8

third-party-beneficiary, and estoppel theories preclude Jody James from avoiding arbitration even though the Agency is a non-signatory.

**1. The Insurance Policy**

When relying on a contract to compel arbitration, the moving party must first establish the existence of a valid and enforceable arbitration agreement.[28] Second, the claims at issue must fall within the arbitration agreement's scope.[29] Whether a non-signatory may enforce an arbitration agreement's terms is a question within the first element.[30]

Section 20(a) of the crop insurance policy requires a "disagreement to be resolved through arbitration." "[D]isagreement" occurs when "[Jody James] and [Rain & Hail] fail to agree on any determination made by [Rain & Hail]." The arbitration agreement's text does not reference any other disagreement, such as disagreements between Jody James and another person or entity.

This litigation centers on the Agency's alleged failure to inform Rain & Hail of Jody James's insurance claim in a timely manner, which is not a disagreement between Rain & Hail and Jody James. This suit does not arise from a disagreement between Rain & Hail and Jody James; indeed, the claims against the Agency actually embrace and depend on Rain & Hail's determination that the claim was late. Section 20(a) thus does not require Jody James to arbitrate this dispute with the Agency.

The Agency, however, cites the first sentence in subsection 20(a)(1) as supporting a much broader application of the policy's arbitration agreement. Subsection 20(a)(1) is a subpart of

---

[28] *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 525 (Tex. 2015); *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001).

[29] *FirstMerit Bank*, 52 S.W.3d at 753.

[30] *G.T. Leach Builders*, 458 S.W.3d at 525.

9

section 20(a), in which the general arbitration agreement resides. Subsection 20(a)(1) reads as follows:

> All disputes involving determinations made by us, except those specified in subsection 20(d), are subject to mediation or arbitration. However, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, either you or we must obtain an interpretation from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC.

Reading the words of subsection 20(a)(1)'s first sentence "in the context in which they are used,"[31] we first observe that it is structurally constrained to the scope of arbitration in Section 20(a), to which it is appended. Second, the first sentence must be considered in light of subsection (a)(1)'s remainder, which is devoted to restricting the scope of arbitration in a specific manner. Construed in context, subsection (a)(1) is thus a limiter, not an expander. This reading accords with the interpretive canon that "[m]aterial within an indented subpart relates only to that subpart."[32] The context of the entire contract confirms the same; when referring to arbitration elsewhere, the insurance policy consistently treats arbitration as pertaining to Rain & Hail and Jody James without expressing any broader application.

Subsection 20(a)(1) is not itself an arbitration agreement; instead, it only describes how far the agreement reaches. The parties must arbitrate "[a]ll disputes" within the arbitration agreement except pure "policy or procedure interpretation[s],"[33] but those disputes only fall within the scope of the agreement if there is a valid arbitration agreement in the first instance.

---

[31] *URI, Inc. v. Kleberg Cty.*, ___ S.W.3d ___, 2018 WL 1440148, at *7 (Tex. 2018).

[32] ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 156 (2012).

[33] The parties do not argue the FCIC must interpret any policy or procedure, and we agree FCIC review is not implicated by the issues in this case. 7 C.F.R. part 400, subpart X, which the insurance contract cites as the authority for FCIC interpretations, clarifies the applicability of the FCIC's interpretative powers and duties. The

A valid arbitration agreement exists for disagreements between Jody James and Rain & Hail, but the insurance policy cannot be reasonably read to encompass disagreements between the signatories and other parties. Accordingly, we turn to alternative theories for compelling arbitration.

**2. Agency**

"[A] contracting party generally cannot avoid unfavorable clauses by suing the other party's agents."[34] Thus, an agent of a signatory may sometimes invoke an arbitration clause against another signatory.[35] To establish an agency relationship, a non-signatory must show it was subject to the principal signatory's control and authorized to act as its agent.[36]

The record does not support the conclusion that Rain & Hail had control over the Agency's actions in relaying a claim from Jody James to Rain & Hail. The Agency points to the insurance contract's references to the "insurance agent," but mere references do not create an agency relationship; the touchstone is control.[37] Because Rain & Hail did not exercise control over the Agency, arbitration cannot be compelled on that basis.

---

parties may obtain "a final agency determination of the interpretation of any provision of the [Federal Crop Insurance] Act or the regulations promulgated thereunder." 7 C.F.R. § 400.765(a). Furthermore, the "FCIC will not interpret any specific factual situation or case, such as actions of any participant under the terms of a policy or any reinsurance agreement." *Id.* § 400.768(a). This case calls for an interpretation of the insurance contract as it applies to the "specific . . . case" between Jody James and the Agency; accordingly, the FCIC-interpretation clause is inapplicable.

[34] *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007).

[35] *See id.*

[36] *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017) ("To establish an agency relationship, one must show a manifestation of consent by the purported agent to act on the principal's behalf and subject to the principal's control, together with a manifestation of consent by the purported principal authorizing his agent to act."); *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017) ("Authority to act on the principal's behalf and control are the two essential elements of agency.").

[37] *See Exxon Mobil Corp.*, 520 S.W.3d at 589.

### 3. Third-Party-Beneficiary Status

Like other contracts, arbitration agreements may also be enforced by third-party beneficiaries, so long as "the parties to the contract intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit."[38]  The benefit must be more than incidental, and the contracting parties' intent to "confer a direct benefit to a third party must be clearly and fully spelled out or enforcement by the third party must be denied."[39]  Whether "the third party intended or expected to benefit from the contract" is irrelevant, because "only the 'intention of the contracting parties in this respect is of controlling importance.'"[40]  As a matter of interpretation, a mere description of the contract's intended use cannot—on its own—confer third-party-beneficiary status.[41]

The contract between Jody James and Rain & Hail does not facially benefit the Agency, but the Agency gleans an intended benefit by reading the contract in the context of the Federal Crop Insurance Act, which sets out guidelines for the FCIC's administration of the Act.[42]  The FCIC's board must "encourage the sale of Federal crop insurance through licensed private insurance agents . . . , in which case the agent . . . shall be reasonably compensated from premiums

---

[38] *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006); *see also In re NEXT Fin. Grp., Inc.*, 271 S.W.3d 263, 267 (Tex. 2008) (ruling that securities brokerage firm could compel arbitration based on arbitration agreement in application for securities industry registration signed by plaintiff employee because the brokerage firm was "a clearly intended third-party beneficiary").

[39] *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999).

[40] *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017) (quoting *Banker v. Breaux*, 128 S.W.2d 23, 24 (Tex. 1939)).

[41] *S. Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 306-07 (Tex. 2007).

[42] *See* 7 U.S.C. § 1507(c).

paid by the insured for such sales and renewals recognizing the function of the agent . . . to provide continuing services while the insurance is in effect."[43]

But as the Agency concedes, the statute's language is nothing more than a statement of intent. A statement of intent is not enough, and no other language in the statute or the contract provides direct benefits to the Agency. The insurer might pay the Agency for continuing service throughout the life of the insurance policy, but the agreement between Jody James and Rain & Hail makes no provision for making any such payments nor even identifies any amount owed to the Agency. The Federal Crop Insurance Act intends general beneficence for insurance agents, but nothing more.

The circumstances here are comparable to *South Texas Water Authority v. Lomas*,[44] in which we held that the City of Kingsville's citizens were not third-party beneficiaries to a water-supply contract between Kingsville and the South Texas Water Authority.[45] The water authority's enabling legislation stated its purpose was to act "for the benefit of the people of this state,"[46] and the water-supply contract at issue specified that the water's intended use was for municipal and industrial customers.[47] The contract did not, however, identify any of the specific citizens claiming third-party beneficiary status, and we held the citizens were not third-party beneficiaries because "general beneficence does not create third-party rights."[48] The same is true

---

[43] *Id.*

[44] 223 S.W.3d 304 (Tex. 2007).

[45] *Id.* at 306.

[46] *Id.* at 307.

[47] *Id.* at 306.

[48] *Id.*

13

here. The contract between Jody James and Rain & Hail does not express an intent to make the insurance agency a direct beneficiary. Any benefit to the Agency is, at best, indirect and incidental.

**4. Estoppel**

We have recognized equitable estoppel as a basis for compelling arbitration, and the Agency contends, as its principal argument, that Jody James is estopped from resisting arbitration of its claims. Our arbitration-estoppel jurisprudence is rooted in a theory of promissory estoppel: "When a promisor induces substantial action or forbearance by another, promissory estoppel prevents any denial of that promise if injustice can be avoided only by enforcement."[49] Estoppel in the arbitration context is based on principles of contract and agency and does not create a requirement to arbitrate where none existed before.[50] Estoppel simply "'prevents a party from insisting upon his strict legal rights when it would be unjust to allow him to enforce them.'"[51] In that spirit, we have recognized and applied the doctrine of direct-benefits estoppel,[52] which the Agency asserts requires arbitration in this case. The Agency also urges that an "alternative estoppel theory" applies, notwithstanding our past reluctance to adopt novel formulations of estoppel to compel arbitration.[53]

---

[49] *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005).

[50] *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 738 (Tex. 2005).

[51] *Weekley Homes*, 180 S.W.3d at 133 (quoting *Wheeler v. White*, 398 S.W.2d 93, 96 (Tex. 1965)).

[52] *Id.* at 131, 134 (citing *Kellogg Brown & Root*, 166 S.W.3d at 741).

[53] *See, e.g.*, *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191-95 (Tex. 2007) (declining to recognize "concerted-misconduct estoppel"); *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 529 (Tex. 2015) ("[T]he fact that the claims would not have arisen but for the existence of the general contract is not enough to establish equitable estoppel.").

14

### a. Direct-Benefits Estoppel

Direct-benefits estoppel applies to parties who seek "to derive a direct benefit" from a contract with an arbitration agreement.[54] This estoppel theory precludes a plaintiff from seeking to hold the non-signatory liable based on the terms of an agreement that contains an arbitration provision while simultaneously asserting the provision lacks force because the defendant is a non-signatory.[55] Simply put, a person "cannot both have his contract and defeat it too."[56] When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability "arises solely from the contract or must be determined by reference to it"[57]—equity prevents a person from avoiding the arbitration clause that was part of that agreement.[58] But "when the substance of the claim arises from general obligations imposed by state law, including statutes, torts and other common law duties, or federal law," direct-benefits estoppel is not implicated even if the claim refers to or relates to the contract or would not have arisen "but for" the contract's existence.[59]

In the archetypal direct-benefits case, the party opposing arbitration seeks to enforce the terms of an agreement with an arbitration clause. In *Rachal v. Reitz*,[60] for instance, we held a trust beneficiary's suit to remove the trustee was arbitrable even though the beneficiary did not sign the

---

[54] *G.T. Leach Builders*, 458 S.W.3d at 527 (internal quotation marks omitted).

[55] *Id.*

[56] *Weekley Homes*, 180 S.W.3d at 135.

[57] *Id.* at 132.

[58] *G.T. Leach Builders*, 458 S.W.3d at 527-28.

[59] *Id.* at 528.

[60] 403 S.W.3d 840 (Tex. 2013).

trust agreement.[61] Though the complainant could not allege a contract claim, the lawsuit was nevertheless premised on the trustee's alleged violation of the trust's terms.[62] The trustee sought to compel arbitration based on the trust's arbitration provision, and we agreed arbitration was required.[63] By pressing a lawsuit that was necessarily based on the trust's terms and validity, the beneficiary was barred by direct-benefits estoppel from avoiding the trust's arbitration provision.[64]

In comparison, we held in *G.T. Leach Builders v. Sapphire V.P.*[65] that a mere relationship between the signatory's claims and the contract containing an arbitration provision was not enough to compel a signatory to arbitrate claims against third parties under a direct-benefits estoppel theory.[66] The signatory, Sapphire V.P., was the developer of a hurricane-damaged condominium project. Sapphire sued several insurance brokers, alleging they allowed an insurance policy to expire shortly before the hurricane. Sapphire also sued the project's general contractor and engineers for negligent construction.[67] Each party had a separate contract with Sapphire, but only the general contract had an arbitration provision.[68]

Sapphire was obligated to arbitrate its claims against the general contractor based on its agreement to do so in the general contract,[69] and the insurance brokers and engineers argued they were similarly entitled to arbitrate Sapphire's claims against them under a direct-benefits estoppel

---

[61] *Id.* at 842, 847-48.

[62] *Id.*

[63] *Id.* at 842.

[64] *Id.* at 847.

[65] 458 S.W.3d 502 (Tex. 2015).

[66] *Id.* at 527-30.

[67] *Id.* at 509-10.

[68] *Id.* at 510, 523.

[69] *Id.*

theory.[70]  Sapphire's allegations against the engineers and insurance brokers, however, relied on duties under their separate contracts for engineering and insurance services, respectively.[71]  Even though Sapphire's claims against the engineers and insurance brokers might not have existed but for the general contract to construct the condominium project, those claims relied on duties independent from it.[72]  Because the claims did not depend on the general contract, direct-benefits estoppel did not apply.[73]

Like Sapphire's allegations against the engineers and insurance brokers, Jody James's claims are independent of the insurance policy.  Jody James might seek a measure of loss that equates to the amount of a contract loss, but direct-benefits estoppel does not apply simply because "the claim *refers* to . . . the contract."[74]  Instead, liability "'must be determined by reference to it.'"[75]  Rather than relying on the insurance policy, Jody James's complaint premises the Agency's liability on tort and DTPA duties that are general, non-contract obligations.

To establish a fiduciary relationship, Jody James must prove a relationship between the parties involving "a high degree of trust and confidence . . . prior to, and apart from" the insurance contract.[76]  A fiduciary duty generally "arises from the relationship of the parties and *not* from the

---

[70] *Id.* at 527, 529.

[71] *Id.* at 528-29.

[72] *See id.*

[73] *Id.*

[74] *Id.* at 528 (emphasis added).

[75] *Id.* (quoting *In re Weekley Homes L.P.*, 180 S.W.3d 127, 132 (Tex. 2005)).

[76] *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176-77 (Tex. 1997).

contract."[77]    Likewise, DTPA claims are created by statute,[78] and "a DTPA claim for misrepresentation is considered separate and distinct from any breach of contract."[79]

This is not a case of mere artful pleading.[80]  The insurance policy does not impose any duties or obligations on the Agency.  At most, by permitting Jody James to report claims through an insurance agent, the policy may assume that an Agency has a pre-existing duty to follow through in filing an insurance claim.  But without contractually mandated duties, Jody James would be unable to maintain a contract claim against the Agency under the insurance policy even if it were inclined to do so.  Instead of enforcing expectations created by contract, any liability is necessarily extra-contractual.  Accordingly, direct-benefits estoppel has not been shown here.

### b. "Alternative Estoppel Theory"

The Agency also relies on the Second Circuit Court of Appeals' "alternative estoppel theory,"[81] also referred to as an "intertwined-claims" theory, to support compelled arbitration.[82] Under this estoppel theory, non-signatories can successfully compel arbitration when (1) they have a "close relationship" with a signatory to a contract with an arbitration agreement and (2) the claims are "intimately founded in and intertwined with the underlying contract obligations."[83]  In *In re Merrill Lynch Trust Co.*, we acknowledged the existence of this theory without deciding its

---

[77] *Manges v. Guerra*, 673 S.W.2d 180, 183 (Tex. 1984) (emphasis added).

[78] *See* TEX. BUS. & COMM. CODE § 17.43 ("The remedies provided in this subchapter are in addition to any other procedures or remedies provided for in any other law.").

[79] *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 270-71 (Tex. 1992).

[80] *Cf. Weekley Homes*, 180 S.W.3d at 131-32 ("[W]hether a claim seeks a direct benefit from a contract containing an arbitration clause turns on the substance of the claim, not artful pleading.").

[81] *Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003).

[82] *See In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 193 (Tex. 2007).

[83] *Thomas-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 779 (2d Cir. 1995).

validity in Texas.[84]  Since then, the Fifth Circuit Court of Appeals has predicted we would adopt this estoppel formulation.[85]  We need not consider the viability of such a theory in this case, because even if we were to embrace it, the Agency has not shown its applicability.

The Second Circuit carefully limited the alternative estoppel theory's application, explaining its precedent does not "mean that whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them, that party will be estopped from refusing to arbitrate."[86]  Rather, "the obligation to arbitrate depends on consent"; alternative estoppel requires not only a dispute intertwined with the contract but also a relationship between the parties that developed in a manner that makes it "unfair" *not* to compel arbitration.[87]

In defining any form of arbitration estoppel, we are guided by similar concerns.  Like the Second Circuit, we focus on the principle that arbitration is "a matter of consent, not coercion."[88]  This is why, when defining the contours of direct-benefits estoppel, we have insisted the doctrine cannot "create liability for noncontracting parties that does not otherwise exist."[89]  More recently, we rejected the even looser concerted-misconduct estoppel theory, because the FAA is only meant "to make arbitration agreements 'as enforceable as other contracts, but not more so.'"[90]  Any

---

[84] *See* 235 S.W.3d at 193 (using the theory as an example of how other federal circuit courts treat estoppel).

[85] *Hays v. HCA Holdings, Inc.*, 838 F.3d 605, 612 (5th Cir. 2016); *see also Cotton Comm'l USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 105 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

[86] *Sokol Holdings, Inc. v. BMB Munai, Inc.*, 542 F.3d 354, 359 (2d Cir. 2008).

[87] *Id.* at 358, 361.

[88] *Merrill Lynch Trust*, 235 S.W.3d at 192 (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)).

[89] *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 134 (Tex. 2005).

[90] *Merrill Lynch Trust*, 235 S.W.3d at 192 (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)).

arbitration doctrine forcing an unwilling party into arbitration must thus have some basis in fairness and consent.

Regardless of how intertwined Jody James's claims are with the insurance policy, which is a matter of debate, the relationship between the Agency and Rain & Hail is not close enough to imply any consent by Jody James to arbitrate this lawsuit. Concerns for consent and fairness mandate a particularly close relationship to invoke alternative estoppel.[91] The Second Circuit's alternative-estoppel cases compelling arbitration typically involve some corporate affiliation between a signatory and non-signatory,[92] not just a working relationship. In contrast, the Agency's relationship to Rain & Hail is no closer than that of any other independent broker or salesman. The Agency, Jody James, and Rain & Hail may have an entangled business relationship with respect to the crop-insurance transaction, but no evidence, nor even allegations, show them to be anything other than independent and distinct entities. A reasonable consumer would not anticipate being forced to litigate complaints against an independent insurance agent in the same manner they agreed to litigate disputes with the insurer. To compel arbitration based on this alternative-estoppel theory, the relationship must be closer than merely independent participants in a business transaction.

---

[91] *See Sokol Holdings*, 542 F.3d at 361 ("In each case, the promise to arbitrate by *x*, the entity opposing arbitration, was reasonably seen on the basis of the relationships among the parties as extending not only to *y*, its contractual counterparty, but also to *y¹*, an entity that was, or would predictably become, with *x*'s knowledge and consent, affiliated or associated with *y* in such a manner as to make it unfair to allow *x* to avoid its commitment to arbitrate on the ground that *y¹* was not the very entity with which *x* had a contract.").

[92] *See id.* at 359-61 (surveying cases).

### III. Conclusion

No party may be compelled to arbitrate unless they have agreed to arbitrate or are bound by principles of agency or contract law to do so. Jody James and the Agency did not agree to arbitrate any matter—not the question of arbitrability and not the merits of this dispute. Nor may Jody James be compelled to arbitrate under agency, third-party-beneficiary, or estoppel theories. We therefore reverse the court of appeals' judgment, vacate the arbitration award, and remand to the trial court for further proceedings.

_____
Eva M. Guzman
Justice

**OPINION DELIVERED: May 11, 2018**