

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-21-00290-CV

**PARRISH & CO., INC.** and East Point Installers, Inc.,
Appellants

v.

Vincent **POLIDORE**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-CI-11827
Honorable Cynthia Marie Chapa, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:       Irene Rios, Justice
               Beth Watkins, Justice
               Lori I. Valenzuela, Justice

Delivered and Filed: April 20, 2022

REVERSED AND REMANDED WITH INSTRUCTIONS

The issue in this interlocutory appeal is whether the trial court abused its discretion in denying appellants' motion to compel arbitration. Concluding arbitration is warranted here, we reverse and remand the cause to the trial court with instructions to render an order compelling the parties of this appeal to arbitrate their disputes.

**BACKGROUND**

On April 9, 2017, appellee Vincent Polidore entered into a Purchase Agreement with Trendmaker Homes, Inc. ("Trendmaker") for the purchase of a home. The Purchase Agreement contained a detailed arbitration clause that provided, in relevant part:[1]

> Binding Arbitration. The parties to this Agreement specifically agree that this transaction involves interstate commerce and that any dispute (whether contract, warranty, tort, statutory or otherwise), including, but not limited to . . . (c) any personal injury or property damage alleged to have been sustained by Purchaser [Polidore] on the Property . . . shall first be submitted to binding arbitration as provided by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) . . . The Arbitrator shall make all decisions respecting the arbitrability of any dispute . . . The Arbitration shall be conducted pursuant to any procedures set forth in the applicable warranty documents. If there is any conflict between this Agreement and such procedures, the provisions of this Agreement shall control. . . . Purchaser [Polidore] and Seller [Trendmaker] agree . . . (2) that Seller shall have the option to include its subcontractors and suppliers as parties in the arbitration. Purchaser [Polidore] agrees and understands that Seller [Trendmaker] will employ various subcontractors to construct portions of the Home. Purchaser [Polidore] hereby acknowledges that those subcontractors have contractually agreed with Seller [Trendmaker] to resolve all disputes according to the terms set out in the Express Limited Warranty, including binding arbitration. Purchaser [Polidore] agrees that any dispute or claim between them and the Seller [Trendmaker] which may in any way involve a subcontractor engaged by Seller [Trendmaker] shall be resolved by the terms set out in the Express Limited Warranty, including binding arbitration. Purchaser [Polidore] agrees and understands that they may not file a lawsuit against Seller [Trendmaker] or any subcontractor as a result of this Agreement.

Referenced in the arbitration clause, the Purchase Agreement incorporated the terms of an Express Home Builder's Limited Warranty ("Limited Warranty"). The Limited Warranty contained an arbitration provision that provided, in relevant part:

> [T]he parties agree that any claim, controversy or dispute (hereafter collectively referred to as "dispute") between YOU and US, or parties acting on YOUR or OUR behalf . . . which relates to or arises

---

[1] The arbitration provisions are reproduced without bold or small caps for readability.

> from . . . the design or construction of the HOME . . . will be resolved solely by binding arbitration and not through litigation in court before a judge or jury. . . . This agreement to arbitrate is intended to inure to the benefit of, and be enforceable by . . . US and OUR contractor, subcontractors, agents, vendors, suppliers, design professionals, materialmen, and any of OUR direct or indirect subsidiaries or related entities alleged to be responsible for any CONSTRUCTION DEFECT. The parties contemplate the inclusion of such other parties in any arbitration of a dispute and agree that the inclusion of such other parties will not affect the enforceability of this arbitration agreement.

On June 30, 2020, Polidore sued appellants Parrish & Co., Inc. ("Parrish") and East Point Installers, Inc. ("East Point") for alleged negligence and gross negligence. Parrish and East Point—nonsignatories to both agreements—were Trendmaker's subcontractors. Polidore alleges in his live pleadings that, on or about June 13, 2019, Polidore's outdoor gas grill leaked and emitted an explosive volume of gas, which ignited, causing a flash fire that resulted in severe burn injuries to Polidore. According to Polidore, the gas grill was sold to Parrish who, along with East Point, installed the gas grill at Polidore's residence. Polidore pled East Point was directly involved in the negligent installation of the gas grill and/or construction of the outdoor kitchen at Polidore's residence and could have prevented the flash fire through the exercise of ordinary prudence.

On December 23, 2020, Parrish and East Point filed a motion to compel arbitration. Among other exhibits, the motion attached the Purchase Agreement, Limited Warranty, and Trendmaker's purchase order of the grill directed to Parrish. After a January 21, 2021 hearing on the motion to compel, the trial court indicated in Judge's Notes that it intended to deny Parrish and East Point's motion to compel; however, the trial court did not enter a written order denying arbitration at that time. On May 5, 2021, Parrish and East Point filed a motion to reconsider defendants' motion to compel arbitration that attached Parrish and East Point's subcontractor agreements with Trendmaker. After a July 2, 2021 hearing, the trial court entered an order simultaneously denying

Parrish and East Point's motion to compel arbitration and motion for reconsideration. This appeal followed.

## STANDARD OF REVIEW

Although the legal standard for nonsignatories seeking to compel arbitration is settled, parties are sometimes confused because courts have at times failed to expressly acknowledge the distinction between, on the one hand, the standard applicable when nonsignatories seek to compel arbitration and, on the other hand, the standard applicable when a signatory seeks to compel nonsignatories to arbitrate. *But see In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) ("Here the question is not whether a non-signatory may be compelled to arbitrate but rather whether a non-signatory may compel arbitration."). At issue here is the former.

A party seeking to compel arbitration must establish two elements: (1) the existence of a valid arbitration agreement and (2) that the disputed claims fall within the scope of that agreement. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 284 (Tex. 2021); *see also* TEX. CIV. PRAC. & REM. CODE § 171.021.

Whether a nonsignatory can compel arbitration pursuant to an arbitration clause falls under the first element. *Jody James Farms, JV v. Altman Group, Inc.*, 547 S.W.3d 624, 633 (Tex. 2018); *see also Cobra Acquisitions LLC v. AL Glob. Services, LLC*, No. 04-19-00410-CV, 2020 WL 1931599, at *5 (Tex. App.—San Antonio Apr. 22, 2020, no pet.) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005)). "Who is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms"; however, courts have also articulated six scenarios in which arbitration with nonsignatories may be required: (1) incorporation by reference, (2) assumption, (3) agency, (4) alter ego, (5) equitable estoppel, and (6) third-party beneficiary. *Jody James*, 547 S.W.3d at 633. Our de novo review of the first element applies the presumption favoring judicial determination and assesses whether there is clear and

unmistakable evidence the signatory agreed to arbitrate arbitrability in disputes with non-signatories. *Id.* at 631.

Once the party seeking to compel arbitration establishes the first element, "a 'strong presumption favoring arbitration arises' and we resolve doubts as to the agreement's scope in favor of arbitration." *Wagner*, 627 S.W.3d at 284 (quoting *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013)). Whether the claims in dispute fall within the scope of a valid arbitration agreement is a question of law we review de novo. *Henry*, 551 S.W.3d at 115. In deciding an arbitration agreement's scope, we focus on the factual allegations and not the causes of action asserted. *Id.*

## ANALYSIS

In their sole issue on appeal, Parrish and East Point argue the trial court erred in denying their motion to compel arbitration because Polidore expressly agreed to arbitrate his personal injury claims against them.

### I.     Existence of a Valid Arbitration Agreement

The first question before us is whether Parrish and East Point, as nonsignatories, established the existence of a valid arbitration agreement by which they can compel arbitration. *See Wagner*, 627 S.W.3d at 284; *Jody James*, 547 S.W.3d at 633. In answering this question, we apply the presumption favoring judicial determination and assess whether there is clear and unmistakable evidence Polidore agreed to arbitrate arbitrability in disputes with nonsignatories Parrish and East Point. *See Jody James*, 547 S.W.3d at 631. We begin by reviewing the contracting parties' intent (as expressed in the terms of the arbitration agreements) to determine whether Polidore and Trendmaker intended to authorize Trendmaker's subcontractors to compel arbitration. *See id.* at 633.

### A.  Can Trendmaker's Subcontractors Compel Arbitration?

The Purchase Agreement expressly delegates arbitrability to the arbitrator: "The Arbitrator *shall make all decisions respecting the arbitrability of any dispute*" (emphasis added). Moreover, the Purchase Agreement reflects "agree[d] and underst[ood] that Seller [Trendmaker] *will employ various subcontractors* to construct portions of the Home" and Polidore expressly "acknowledge[d] that those *subcontractors have contractually agreed with Seller* [Trendmaker] *to resolve all disputes according to the terms set out in the Express Limited Warranty, including binding arbitration*" (emphasis added). Polidore also expressly "agree[d] and underst[ood] that [he] *may not file a lawsuit against* Seller [Trendmaker] or *any subcontractor as a result of this Agreement*" (emphasis added). Polidore could not file a *lawsuit* against Trendmaker's subcontractors because he was required to *arbitrate* all disputes against them.

The Limited Warranty, which is expressly incorporated into the Purchase Agreement to the extent it does not conflict with it, reinforces our interpretation. In the Limited Warranty, Polidore and Trendmaker "agree[d] that any claim, controversy or dispute . . . between *YOU* [Polidore] *and . . . parties acting on . . . OUR* [Trendmaker's] *behalf* . . . which relate[] to or arise[] from . . . the design or construction of the HOME . . . *will be resolved solely by binding arbitration*" (italics added). The agreement to arbitrate was expressly "*intended to inure to the benefit of, and be enforceable by* . . . US and *OUR contractor, subcontractors, agents, vendors, suppliers, design professionals, materialmen*, and any of OUR direct or indirect subsidiaries or related entities alleged to be responsible for any CONSTRUCTION DEFECT" (italics added). And Trendmaker and Polidore "contemplate[d] the inclusion of such other parties in any arbitration of a dispute and agree that the inclusion of such other parties will not affect the enforceability of this arbitration agreement."

Polidore argues one sentence in the Purchase Agreement undercuts Parrish and East Point's assertion of a right to compel arbitration. That sentence states, "Purchaser and Seller further agree . . . that Seller shall have the option to include its subcontractors and suppliers as parties in the arbitration." According to Polidore, "[t]his language clearly and unambiguously demonstrates that, with respect to claims against subcontractors and suppliers, the right to compel arbitration exists solely for the benefit of [Trendmaker], and not its subcontractors and vendors." For the same reason, Polidore argues the bargain to arbitrate with respect to subcontractors is illusory. We disagree.

Polidore's construction runs contrary to the requirement that we construe contracts holistically and discern intent by construing words and phrases together and in context, not in isolation. *Hysaw v. Dawkins*, 483 S.W.3d 1, 13 (Tex. 2016). And when read in context, this language simply serves to clarify that Trendmaker has a right to include its subcontractors in arbitrations Polidore may bring against Trendmaker alone where Trendmaker believes the inclusion of subcontractors is warranted. That does not undercut the rest of the language of the arbitration provisions—quoted above—clearly and unmistakably authorizing Trendmaker's subcontractors to have an arbitrator determine arbitrability of disputes asserted against them by Polidore. *See In re Rubiola*, 334 S.W.3d at 226 ("We conclude that signatories to an arbitration agreement may identify other parties in their agreement who may enforce arbitration as though they signed the agreement themselves.").

Additionally, "an arbitration clause is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether." *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010). Here, no language suggests any party has a unilateral right to amend or terminate the right to arbitrate. In fact, the Limited Warranty contains language expressly to the contrary: "The parties contemplate the inclusion of such other parties in any

arbitration of a dispute and agree that the inclusion of such other parties will not affect the enforceability of this arbitration agreement."

For these reasons, we hold the arbitration provisions clearly and unmistakably authorize Trendmaker's subcontractors to submit the issue of arbitrability of disputes arising out of the Purchase Agreement and Limited Warranty to an arbitrator. *See Jody James*, 547 S.W.3d at 631, 633.

### B. Are Parrish and East Point Trendmaker's Subcontractors?

We must still determine whether Parrish and East Point satisfied their evidentiary burden to establish they are categorized as Trendmaker's subcontractors authorized to submit the issue of arbitrability to an arbitrator. Our review of the pleadings and the record (including the subcontractor agreements and purchase order) confirms that Parrish and East Point were Trendmaker's contractors, subcontractors, or suppliers with respect to the gas grill that Polidore alleges caused his injuries. Parrish and East Point are accordingly entitled to submit the issue of arbitrability to arbitration pursuant to the terms of the Purchase Agreement and Limited Warranty.

For these reasons, we conclude Parrish and East Point established the existence of a valid arbitration agreement on which they were entitled to submit the issue of arbitrability to an arbitrator. *See Jody James*, 547 S.W.3d at 631, 633.

### II. Scope of Arbitration

Parrish and East Point having established the first element, "a 'strong presumption favoring arbitration arises' and we resolve doubts as to the agreement's scope in favor of arbitration." *Wagner*, 627 S.W.3d at 284. In assessing the scope of the arbitration provisions, we focus on the factual allegations and not the causes of action asserted. *Henry*, 551 S.W.3d at 115.

Polidore asserts his outdoor gas grill leaked and emitted an explosive volume of gas, which ignited, causing a flash fire that resulted in his injuries. According to Polidore, Parrish and East

Point were jointly responsible for the negligent installation of the gas grill at Polidore's residence. Polidore asserts that both Parrish and East Point were "involved in the marketing, sale, distribution, delivery and installation" of the gas grill "and/or furnished labor, materials, or inspection services in connection with same." According to Polidore, East Point "was also directly involved in the negligent installation of the subject gas grill and/or construction of the outdoor kitchen at [Polidore]'s residence and could have prevented the flash fire through the exercise of ordinary prudence by inspecting or causing to be inspected the installation of the subject gas grill for conformity to local, national, and international fire safety and fuel gas codes, yet failed to do so."

Polidore's claims plainly fall within the scope of disputes covered by the arbitration provisions. The Purchase Agreement requires arbitration of "*any dispute* (whether contract, warranty, *tort*, statutory or otherwise), including, but not limited to . . . (c) *any personal injury* or property damage alleged to have been sustained by Purchaser [Polidore] on the Property" (emphasis added). Polidore expressly acknowledged "subcontractors have contractually agreed with Seller [Trendmaker] to resolve *all disputes* according to the terms set out in the Express Limited Warranty, *including binding arbitration*" (emphasis added). *See Wagner*, 627 S.W.3d at 286 ("All obligations means **all** obligations.") (emphasis in original). He further agreed "*any dispute* or claim between them and the Seller [Trendmaker] *which may in any way involve a subcontractor* engaged by Seller [Trendmaker] *shall be resolved by* the terms set out in the Express Limited Warranty, *including binding arbitration*" (emphasis added). The Limited Warranty confirms the broad scope of arbitration proceedings: "[T]he parties agree that *any claim, controversy or dispute* . . . which relates to or arises from . . . the design or construction of the HOME . . . will be resolved solely by binding arbitration . . ." (emphasis added).

We hold Polidore's claims fall within the scope of disputes covered by the arbitration provisions.

**CONCLUSION**

Because (1) Trendmaker and Polidore expressly agreed Trendmaker's subcontractors could compel arbitration, (2) Parrish and East Point are Trendmaker's subcontractors with respect to the work Polidore alleges resulted in his injuries, and (3) Polidore's claims fall within the scope of disputes covered by the arbitration provisions, we need not reach any other issues. *See* TEX. R. APP. P. 47.1. The trial court's judgment is reversed, and we remand the cause to the trial court with instructions to render an order compelling the parties to this appeal to arbitrate their disputes.

Lori I. Valenzuela, Justice