

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| VIBRA REHABILITATION HOSPITAL OF EL PASO, LLC d/b/a HIGHLANDS REHABILITATION HOSPITAL, SABRA TEXAS HOLDINGS, L.P., and DIANA SCHULTZ, | § § § § § | No. 08-23-00137-CV<br><br>Appeal from the<br><br>120th Judicial District Court |
| Appellants, | § | of El Paso County, Texas |
| v. | § | (TC# 2022DCV2999) |
| RAMIRO ILLARRAMENDI, JR., | § | |
| Appellee. | § | |

## SUBSTITUTE MEMORANDUM OPINION

We withdraw our opinion and judgment of May 17, 2024, and substitute the following opinion in its place. Appellee's motion for rehearing is denied.

This case returns us to the recurrent issue of whether a non-signatory to an arbitration agreement can compel arbitration. Ramiro Illarramendi, Jr., and Vibra Healthcare, LLC (Vibra) were signatories to an arbitration agreement to resolve any workplace-injury claim. Illarramendi suffered a workplace injury and later filed suit against Vibra, together with three non-signatories—Vibra Rehabilitation Hospital of El Paso, LLC, d/b/a Highlands Rehabilitation Hospital (Highlands), Diana Schultz (Schultz), and Sabra Texas Holdings, L.P. (Sabra). [1] All these

---

[1] Illarramendi also sued Vibra Healthcare Real Estate Company, LLC, El Paso Healthcare System, Ltd., and HCA Health Services of Texas, Inc., but these parties have been nonsuited.

defendants moved to compel arbitration of Illarramendi's workplace-injury claims. The trial court granted the motion as to Vibra but denied relief to our Appellants—Highlands, Schultz, and Sabra. We reverse as to Highlands because the record shows it is an affiliate of Vibra, and affiliates are expressly defined as the "Company" and therefore entitled to enforce the arbitration agreement. We also reverse as to Schultz—the CEO of Highlands—because she was acting in the scope of her agency with Highlands. We affirm as to Sabra, which has no connection to the arbitration agreement and was sued as the premises owner over alleged premises defects.

## I. BACKGROUND

### A. Factual background

Illarramendi, a maintenance supervisor at Highlands, alleges that he was electrocuted and fell from a ladder while inspecting a light fixture. He asserts these claims against Vibra, Highlands, Schultz, and Sabra:

> Vibra, although not alleged to be Illarramendi's employer, "owed [him] a duty through . . . exercise of control over the details of [his] work," which duty it breached by failing to provide adequate "policies, procedures, and equipment."

> Highlands, for whom Illarramendi "was working in the course and scope of his employment" when the alleged incident occurred, had a duty to "provide sufficient training, assistance, and equipment for [him] to . . . perform his work safely[,]" but failed to do so.

> Schultz, Highlands's CEO, instructed [Illarramendi] "to inspect a light that seemed to be out of order . . . despite [having] knowledge that the hospital was underfunded and understaffed, and without ensuring [he] was qualified and properly equipped[.]"[2]

> Sabra, as "owner" and "possessor" of the premises, "owed . . . a duty of ordinary care in maintaining a safe working environment, including a responsibility to inspect and make safe any dangerous condition or give adequate warning of any hazardous conditions," but failed to do so.

---

[2] This allegation is found in the factual-background section of Illarramendi's pleading. The pleading's causes-of-action section does not mention Schultz.

Illarramendi concedes he elected to participate in Vibra's employee injury benefit plan (the Plan), including the arbitration agreement that it contains. The Plan contains these provisions relevant to our dispute:

1.2 <u>Purpose</u>. The purpose of this Plan is to provide eligible Texas employees of the Company who comply with the requirements specified . . . certain medical and wage continuation benefits in the event of an on-the-job injury . . . .

2.6 <u>Company</u>. "Company" means Vibra Healthcare, LLC with its principle (sic) place of business located at 4600 Lena Drive, Mechanicsburg, PA 17055 or any affiliate or successor thereof that subsequently adopts the Plan.

2.9 <u>Employee</u>. "Employee" means an individual employed in the regular business of the Company who receives his or her pay on a regular basis by means of a salary or wage directly from the Company. . . .

10.1 <u>Arbitration</u>. It is agreed that, except provided in Article VII [benefit claims procedure], any and all disputes, claims (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Plan or to the occupational injury, death or disease of a Plan Participant shall be submitted to final and binding arbitration under the Federal Arbitration Act. . . .

12.4 <u>Employer Information</u>.

Your Employer's name, address, business telephone number and identification number are:

Vibra Healthcare, LLC
4600 Lena Drive
Mechanicsburg, PA 17055
(717) 591-5700
Participating sites identified in Addendum 1

ADDENDUM 1
PARTICIPATING SITES:

Highlands Rehabilitation Hospital
1395 George Dieter Drive
El Paso, TX 79936
Phone: (915) 298-7222
EIN: 47-1033481

3

Vibra's general counsel, Douglas C. Yohe, testified below that "[Highlands] is a 100% owned subsidiary of Vibra Rehab Holdings, LP," that "Vibra Rehab Holdings, LP and [Vibra] are affiliates due to Brad E. Hollinger . . . owning a supermajority of both," and that "Highlands . . . and Diana Schultz are . . . affiliates of and under corporate control of [Vibra]."

### B. Procedural history

Shortly after Illarramendi filed suit, Vibra and Appellants moved to compel arbitration. Following two hearings, the trial court granted the motion as to Vibra and denied it as to Highlands, Schultz, and Sabra.[3] This interlocutory appeal follows. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 ("In a matter subject to the Federal Arbitration Act . . . a person may take an appeal . . . to the court of appeals from the . . . interlocutory order of a district court . . . under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. [§] 16."); 9 U.S.C. § 16(a)(1)(C) ("An appeal may be taken from . . . an order . . . denying an application . . . to compel arbitration").

## II. DISCUSSION

Before our Court, Appellants raise four issues, contending that the trial court erred by: (1) denying their motion to compel arbitration as non-signatories to the Plan; (2) not concluding that Schultz can compel arbitration as Highlands's agent; (3) not concluding that Illarramendi's claims are all "factually intertwined," thereby entitling them to compel arbitration; and (4) not staying the case until after the arbitration against Vibra is over. Illarramendi responded with a preliminary challenge that we address first.

### A. Controlling law and standard of review

A party seeking to compel arbitration must establish the existence of a valid arbitration

---

[3] Illarramendi does not oppose being compelled to arbitrate his claims against Vibra, who is not a party to this appeal.

agreement and that the claims raised fall within the agreement's scope. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010). Whether an arbitration agreement is valid and enforceable is a legal question. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). If the moving party meets its burden of establishing a valid agreement, the burden shifts to the party opposing arbitration to raise a valid defense against its enforcement. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam) (orig. proceeding). Absent evidence of a valid defense, the trial court must compel arbitration. *J.M. Davidson, Inc.*, 128 S.W.3d at 227. Or as our supreme court has noted: "[T]he right to a jury trial is not discretionary. Nor is the right to have an arbitration contract enforced. If the parties have not agreed to arbitration, no trial court has discretion to make them go; if they have agreed to arbitration, no trial court has discretion to let one wriggle out." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 193 (Tex. 2007) (orig. proceeding).

"Motions to compel arbitration are ordinarily decided in summary proceedings 'on the basis of affidavits, pleadings, discovery, and stipulations.'" *APC Home Health Servs., Inc. v. Martinez*, 600 S.W.3d 381, 388–89 (Tex. App.—El Paso 2019, no pet.) (quoting *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 (Tex. 1992)). "However, if the material facts necessary to determine the issue are controverted, by an opposing affidavit or otherwise admissible evidence, the trial court must conduct an evidentiary hearing to determine the disputed material facts." *Tipps*, 842 S.W.2d at 269.

We review a trial court's denial of a motion to compel arbitration for abuse of discretion and defer to its factual determinations if they are supported by the evidence; however, we review its legal determinations de novo. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018); *APC Home Health*, 600 S.W.3d at 389. Because here, the trial court did not enter findings of fact or conclusions of law, we must uphold its decision on any appropriate legal theory urged below. *Id.*

5

**B. Must Appellants specifically challenge "implied findings of fact"?**

We begin by addressing Illarramendi's argument that because Appellants failed to challenge the trial court's implied findings of fact, this appeal should be decided in his favor without reaching the issues raised by Appellants. As Illarramendi posits, "Appellants have not challenged the sufficiency of the evidence to support the trial court's implied finding that they failed to carry their burden of proof on the disputed fact issues," and "[u]nchallenged findings of fact are binding on the Court[.]" The sole disputed fact issue identified by Illarramendi is whether Appellants "adopted" the Plan.

While we agree unchallenged findings of fact are binding on this Court, we do not agree that a "finding" that a party has failed to carry its burden of proof is a "finding of fact." Rather, this is a conclusion of law. Moreover, and as explained below, we conclude that Highlands presented evidence that it was an "affiliate" and entitled to enforce the arbitrations clause in Vibra's plan. We next address the issues raised by Appellants.

**C. Whether Highlands[4] is the "Company" as defined in the Plan**

While generally only parties to an arbitration agreement may compel arbitration, there are exceptions. *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 524 (Tex. 2015); *see also In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding) (listing "(1) incorporation by reference; (2) assumption; (3) agency; (4) alter ego; (5) equitable estoppel, and (6) third-party beneficiary"). The facts here implicate one such exception: "signatories to an arbitration agreement may identify other parties in their agreement who may enforce arbitration as though they signed the agreement themselves." *In re Rubiola*, 334 S.W.3d

---

[4] Appellants' first issue globally references all three appellants, but no argument is presented as to Schultz or Sabra. Thus, we address this issue only as to Highlands.

220, 226 (Tex. 2011) (orig. proceeding).

Whether an arbitration agreement can be enforced by a non-signatory depends on the parties' intent as expressed in their agreement. *Id.* at 224. Arbitration agreements are interpreted under traditional contract principles. *In re Whataburger Restaurants LLC*, 645 S.W.3d 188, 194 (Tex. 2022) (orig. proceeding). That is, the plain language controls, "[w]ords must be construed 'in the context in which they are used,'" and courts will "examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Id.* at 194–95. Further, "[n]o single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* at 195. Legions of Texas Supreme Court cases tell us that "[o]ur 'primary objective' when construing private legal instruments . . . 'is to ascertain and give effect to the parties' intent as expressed in the instrument.'" *U.S. Polyco, Inc. v. Texas Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 387 (Tex. 2023) (quoting *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018). When a contract is unambiguous, we enforce it "as written without considering extrinsic evidence bearing on the parties' subjective intent." *Devon Energy Prod. Co. v. Sheppard*, 668 S.W.3d 332, 343 (Tex. 2023).

Here, it is undisputed that a valid arbitration agreement exists between Illarramendi and Vibra. That agreement is contained in the Plan, whose purpose is to provide "Employees" of "the Company" certain benefits for on-the-job injuries. The Plan defines "Employee" as "an individual employed in the regular business of the Company." It is undisputed that Illarramendi was an employee of Highlands, if not Vibra, at the time of the alleged incident. The arbitration clause specifically covers any claim "that the Company did not provide a safe workplace or that the Company's workplace is or was unsafe" and "personal injuries or death sustained by a Participant

7

in the course and scope of employment."

The Plan defines "Company" as "Vibra Healthcare, LLC . . . or any affiliate or successor thereof that subsequently adopts the Plan." Douglas C. Yohe, in his capacity as General Counsel for Vibra Healthcare, LLC and its affiliated entities and with knowledge regarding the corporate structure of the same based on his job duties, avers that Vibra Rehabilitation Hospital d/b/a Highlands Rehabilitation Hospital is a 100% owned subsidiary of Vibra Rehab Holdings, LP, and that Vibra Rehab Holdings, LP is an affiliate of Vibra Healthcare, LLC, as the entities have a common supermajority owner. And as noted above, Yohe separately avers that "Highlands . . . and Diana Schultz are . . . affiliates of and under corporate control of [Vibra]."[5]

Illarramendi's argues that Highlands cannot compel arbitration because there is no proof that Highlands "adopted" the Plan. The fallacy in that argument is that it assumes an affiliate, as distinct from a successor, must have adopted the plan. The relevant contract clause reads:

> 2.6    Company. "Company" means Vibra Healthcare, LLC with its principle (sic) place of business located at 4600 Lena Drive, Mechanicsburg, PA 17055 or any affiliate or successor thereof that subsequently adopts the Plan.

To construe this provision as Illarramendi suggests, we must determine if the subsequent-adoption requirement applies to an "affiliate" or only to a "successor." And to decide that question, two canons of construction square off as they sometime do. The "Series-Qualifier Canon" instructs that "[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modified normally applies to the entire series." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 147 (2012). Under that canon, the subsequent-adoption requirement would modify each of the named entities in the

---

[5] Illarramendi objected to Yohe's affidavit in the trial court, but his objections were overruled. Illarramendi does not challenge that ruling on appeal. In his motion for rehearing, Illarramendi asserts that "the majority erroneously states that the affidavit of Vibra's general counsel adds 'that both Highlands and Schultz were under Vibra's corporate control.' That is not the case." (citation omitted). However, we quote directly from Yohe's affidavit.

series, to include "affliates."

Contrast that with the "Last-Antecedent-Canon" that instructs "A pronoun, relative pronoun, or demonstrative adjective generally refers to the nearest reasonable antecedent." *Id.* 144; *see also In re ReadyOne Indus., Inc.*, 394 S.W.3d 689, 693 (Tex. App.—El Paso 2012, no pet.) ("Similarly, the last antecedent rule states that a qualifying phrase in a statute must be confined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied."). Using that canon, the correct grammatical construction of the clause means that Company includes:

1. "Vibra Healthcare, LLC with its principle (sic) place of business located at 4600 Lena Drive, Mechanicsburg, PA 17055 or"

2. "any affiliate or"

3. a "successor thereof that subsequently adopts the Plan."

These canons often conflict and a court should "assess the language, structure, and context of a written instrument to determine which principle carries more weight and relevance." *U.S. Polyco, Inc.*, 681 S.W.3d at 388. Looking to the written instrument as a whole, we conclude that the last-antecedent canon controls for several reasons.

First, the series modifier canon would mean that the subsequent-adoption requirement would also apply to "Vibra Healthcare, LLC with its principle (sic) place of business located at 4600 Lena Drive, Mechanicsburg, PA 17055[.]" But that would make no sense and cuts against the text of the agreement. Vibra was already a signatory to the agreement and what more could it do to adopt the plan? *See U.S. Polyco, Inc.*, 681 S.W.3d at 388–89 (similarly noting that use of the series-qualifier canon would lead to an "unnatural reading of the agreement" by requiring agreements to be in writing that were already listed in the agreement). Conversely, it would make sense that a successor, or a successor of an affiliate, might be required to adopt the Plan. The

9

successor would be an entirely different entity and a true stranger to the original transaction.

Second, the punctuation in paragraph 2.6 points to the last antecedent canon. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS, 161 (2012) (Punctuation Canon: "Punctuation is a permissible indicator of meaning"); *Ring Energy v. Trey Res., Inc.*, 546 S.W.3d 199, 209 (Tex. App.—El Paso 2017, no pet.) ("Punctuation 'will often determine whether a modifying phrase or clause applies to all that preceded it or only to a part.'") (quoting *Sullivan v. Abraham*, 488 S.W.3d 294, 297 (Tex. 2016). Here, the lack of a comma to set off the "subsequent adoption" requirement favors the last antecedent canon. As the Texas Supreme Court explained in *Sullivan*, "[p]roperly placed commas [c]ould cancel the last antecedent canon and vice versa." *Sullivan*, 488 S.W.3d at 297–98 (quoting Scalia and Garner). The court gave this example from Scalia and Garner's treatise:

> "You will be punished if you throw a party, or engage in any other activity, that damages the house." The comma after "activity" does substantial work: It signals that the phrase "that damages the house" modifies both "party" and "any other activity." Absent the comma after "activity," the last-antecedent canon would be triggered and the phrase "that damages the house" would modify only "any other activity."

*Id.* at 297–98 (citations omitted). By the same token, the omission of a comma to set off the clause "that subsequently adopts the Plan" similarly points to that clause modifying only "successors" and not the Vibra or an "affiliate." *See U.S. Polyco, Inc*, 681 S.W.3d at 388 ("By choosing instead to itemize distinct improvements in Section 1.1(3) and include the writing requirement only at the *end*, the comma's absence is instructive because it conveys that the 'in writing' provision is simply part of the final item in the list.").

Third, the last antecedent-canon better fits the context of the provision under the agreement. The purpose of the Plan is to provide "Employees" of "the Company" certain benefits for on-the-job injuries. In return, an employee complaining "that the Company did not provide a safe

workplace or that the Company's workplace is or was unsafe" and "personal injuries or death sustained by a Participant in the course and scope of employment" must arbitrate those disputes. Illarramendi's own pleadings assert that he was working for Highlands.[6] And Highlands is specifically referenced in the Plan on Addendum 1, not just as an address, but as an employer entity.[7] It is therefore little surprise that the record shows Highlands is an "affiliate" and as an affiliate, it is defined with no further restrictions as the "Company."

This construction of the definition of Company in paragraph 2.6 moots the balance of the arguments that Illarramendi raises. He relies on *Golden Age Senior Living of El Paso, LLC v. Atwood*, 486 S.W.3d 44, 48 (Tex. App.—El Paso 2016, no pet.) and *Red Bluff, LLC v. Tarpley*, No. 14-17-00505-CV, 2018 WL 6722346 (Tex. App.—Houston [14th Dist.] Dec. 21, 2018, no pet.) (mem. op.) to bolster his argument that Highlands failed to prove it "adopted" the Plan. But that analysis assumes an affiliate must adopt the Plan, a proposition belied by the text of the agreement. Thus, we have no need to address the adoption of the plan argument, or the case law that may bear on that question. Highlands first issue is sustained.

### D.   Whether Schultz has a right to compel arbitration

As Highlands holds a right to compel arbitration, we turn to whether Schultz, its CEO, also holds the same right.

---

[6] In some cases, pleading that a party is one's employer may alone be enough to trigger an obligation to arbitrate with that party under an employer-employee arbitration agreement. *See In re Macy's Texas, Inc.*, 291 S.W.3d 418, 420 (Tex. 2009) ("As Tomsic agreed to arbitrate with her employer and *purported to sue her employer*, she cannot avoid arbitration by raising factual disputes about her employer's correct legal name.") (emphasis added).

[7] The several Highlands Rehabilitation Hospitals are all listed with unique "EIN" numbers, which can be understood only as an employer identification number used by the Internal Revenue Service for gathering wage and withholding information. *See Gandhi v. Centers for Medicare & Medicaid Servs.*, 665 F.Supp.3d 49, 52 (D.D.C. 2023) ("Employer Identification Number [EIN], [is] a type of tax-identification number assigned to businesses by the Internal Revenue Service."); 26 U.S.C.A. § 6109 (describing issuance criteria for EIN and use in taxpayer tax returns).

Another way that a non-signatory can compel compliance with an arbitration agreement is by showing "agency." *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 633 (Tex. 2018). As the Texas Supreme Court explains, "a contracting party generally cannot avoid unfavorable clauses by suing the other party's agents"; thus, "an agent of a signatory may sometimes invoke an arbitration clause against another signatory." *Id.* at 635 (quotation marks omitted). The exception recognizes the idea that "it is impractical to require every corporate agent to sign or be listed in every contract." *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007) (orig. proceeding). To establish that right, a non-signatory agent must "show it was subject to the principal signatory's control and authorized to act as its agent." *Jody James Farms, JV*, 547 S.W.3d at 635.

Here, Yohe's affidavit states that non-signatory Highlands and signatory Vibra have a common owner and are affiliates. The affidavit adds that both Highlands and Schultz were under Vibra's corporate control. Furthermore, Illarramendi acknowledges that Schultz was Highlands's CEO, meaning she was authorized to act as its agent as well as subject to its control. *See Cobra Acquisitions LLC v. AL Glob. Services, LLC*, No. 04-19-00410-CV, 2020 WL 1931599, at *5 (Tex. App.—San Antonio Apr. 22, 2020, no pet.) (mem. op.) (holding corporate CEO who was authorized to act as agent and under signatory's control was covered by arbitration agreement).

As a result, Schultz argues, she has a right to compel arbitration under *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759 (Tex. 2006), which held that agents of a non-signatory affiliate were entitled to invoke an arbitration clause given that the affiliate was so entitled. 192 S.W.3d at 764. As the *Vesta* court reasoned:

> [C]orporations must act through human agents. . . . When contracting parties agree to arbitrate all disputes "under or with respect to" a contract (as they did here), they generally intend to include disputes about their agents' actions because "[a]s a general rule, the actions of a corporate agent on behalf of the corporation are

12

deemed the corporation's acts." If arbitration clauses only apply to contractual signatories, then this intent can only be accomplished by having every officer and agent (and every affiliate and its officers and agents) either sign the contract or be listed as a third-party beneficiary. This would not place such clauses on an equal footing with all other parts of a corporate contract [and would thus not comport with federal and state policy regarding arbitration].

*Id.* at 762 (citation omitted).

Illarramendi does not contest that *Vesta*'s reasoning applies. Instead, he claims that (1) Highlands cannot show it is a party to the arbitration, thus Schultz's agency relationship with Highlands is moot; and (2) Schultz's "exact argument" was overruled in *Golden Age*.

But we have already concluded above that Highlands could compel arbitration as the Company in the Plan, thus so too would its agents, like Schultz. Stated otherwise, Illarramendi offers no reason why Schultz cannot compel arbitration if Highlands can do so. We conclude that Schultz, as Highlands's agent, is entitled to compel arbitration of Illarramendi's workplace-injury claims under *Jody James Farms* and *Vesta*.

### E. Whether intertwining of claims entitles Sabra[8] to compel arbitration

Sabra argues it could compel arbitration because Illarramendi's claims against it are "based on the same operative facts and are substantially similar and intertwined with the claims [Illarramendi] has asserted against Vibra[.]" In support of this argument, Sabra cites *Texas Petrochemicals LP v. ISP Water Mgmt. Services LLC*, 301 S.W.3d 879 (Tex. App.—Beaumont 2009, no pet.) and *Natgasoline LLC v. Refractory Constr. Servs., Co.*, 566 S.W.3d 871 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). Neither case is controlling, nor so persuasive for us to adopt the doctrine in this district on this set of facts.

---

[8] Appellants' Issue Three mentions all three Appellants, but we have already concluded that Highlands and Schultz are entitled to compel arbitration. Thus, we address this issue only as to Sabra, and express no opinion on how the intertwining of claims as between Vibra and Highlands might provide a secondary basis for Highlands (and Schultz) to compel arbitration.

*Texas Petrochemicals* did not address whether a non-signatory might be able to compel arbitration. Instead, the case decided whether *claims* outside the scope of an arbitration agreement might still be required to be arbitrated. 301 S.W.3d at 885. Thus, *Texas Petrochemicals* is of little assistance here. The *Natgasoline* court discusses an "intertwined-claims theory" as recognized by the United States Second Circuit Court of Appeals, but it also notes this theory has not been adopted by the Texas Supreme Court. 566 S.W.3d at 888.[9] Moreover, the Second Circuit's theory does not apply "whenever a relationship of any kind may be found among the parties to a dispute and their dispute deals with the subject matter of an arbitration contract made by one of them." *Id*. Instead, "the relationship must be closer than merely independent participants in a business transaction." *Id*. at 889.

Here, Sabra makes no argument that its relationship with Vibra or any other party entitled to arbitrate is closer than that between independent parties to a business transaction. On this record, it is no more than the landlord to Vibra or Highlands. Sabra has not shown itself to have a right to compel arbitration of Illarramendi's workplace-injury claims.

## F.    Whether a stay is required

Appellants' last issue, relevant now only to Sabra, is whether the trial court should have stayed the case while the arbitration proceeds against Vibra. A stay would be required when "the same issues must be decided both in arbitration (against [a signatory]) and in court (against [a non-signatory])." *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 195 (Tex. 2007) (orig. proceeding). "[T]he Federal Arbitration Act generally requires the arbitration to go forward first; arbitration

---

[9] Sabra cites an earlier Fourteenth Court of Appeals' opinion in *Cotton Commercial USA v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 105 (Tex. App.—Houston [14th Dist.] 2012, no pet.) for the proposition that the Texas Supreme Court recognizes an 'intertwined-claims' test. Our reading of the Texas Supreme Court's decision, however, better comports with the Fourteenth Court's later 2018 opinion in *Natgasoline*, that it has not. 566 S.W.3d at 888 (citing *Jody James Farms, JV v. Altman Group, Inc*., 547 S.W.3d 624, 639 (Tex. 2018)).

should be given priority to the extent it is likely to resolve issues material to this lawsuit." *Id.* (quotation marks omitted); *See also In re Merrill Lynch & Co.*, 315 S.W.3d 888, 891 (Tex. 2010) (orig. proceeding) (parallel litigation involving non-signatory to arbitration agreement should be stayed if it "threaten[s] to undermine or moot the arbitration").

Under Issue Four, Sabra asks us to review the trial court's decision that denied a stay when three, and not one defendant, remained in the litigation. Because we conclude that Highlands and Schultz should also join the arbitration (and leave the litigation), the calculus for a stay may (or may not) change. Accordingly, we express no view on whether a stay of trial court proceedings might be required under these new circumstances, assuming either side requests such relief after the case is remanded.

## III. CONCLUSION

We reverse the trial court's denial of the motion to compel arbitration in regard to Highlands and Schultz, but affirm denial of the motion in regard to Sabra, and remand the case to the trial court for further proceedings consistent with this opinion.

JEFF ALLEY, Chief Justice

December 13, 2024

Before Alley, C.J., Palafox and Soto, JJ.
Palafox, J., concurring and dissenting in part

15