# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00482-CV

**CPG 220 Holdings 2014, LLC, and CPG 208 Nueces Holdings 2015, LLC, Appellants**

**v.**

**Branigan Mulcahy, Appellee**

### FROM THE 345TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-21-005046, THE HONORABLE MARIA CANTÚ HEXSEL, JUDGE PRESIDING

## O P I N I O N

CPG 220 Holdings 2014, LLC and CPG 208 Nueces Holdings 2015, LLC (Third & Shoal) appeal the trial court's interlocutory order denying their motion to stay the underlying lawsuit and compel arbitration of all claims and defenses in the suit.[1]  The suit was filed against Appellants by appellee Branigan Mulcahy, who pleaded claims for breach of contract and a writ of mandamus to inspect Appellants' records, seeking damages, costs, interest, and attorneys' fees. In a sole appellate issue, Appellants contend that the trial court erred by denying their motion.  But because the arbitration agreement that Appellants put forward—to which they were not signatory parties—does not clearly and unmistakably delegate to the arbitrator the arbitrability decision here

---

[1]  *See* Tex. Civ. Prac. & Rem. Code §§ 51.016 (citing 9 U.S.C. § 16) (interlocutory appeal of order denying motion to compel arbitration under Federal Arbitration Act), 171.098(a)(1) (interlocutory appeal of order denying motion to compel arbitration under Texas General Arbitration Act).  The parties do not dispute or address which arbitration act, state or federal, applies here, nor do they identify any conflict between the acts on the issues involved in this appeal.

and because they have not asserted a recognized basis for non-signatories to compel arbitration, we affirm the trial court's order.

## BACKGROUND

Over a decade ago, Mulcahy went to work for a firm involved in real-estate development and investing, Cielo Property Group, LLC. Their employment relationship was governed by an Employment Agreement between Mulcahy and G&A Partners (the G&A Agreement), which Mulcahy signed. G&A was involved because Cielo used it, one of Cielo's co-managing members testified, to "provide[] human resources functions for [G&A's] clients."

The G&A Agreement provides that Mulcahy was to be "co-employed by G&A Partners . . . and Client to perform services for Client."[2] (All-capitalization removed.) It adds, regarding the relationships between Mulcahy, G&A, and the Client:

> G&A entered into an agreement with Client to provide administrative and employment services and is currently hiring you to work on assignment with Client as a member of its regular workforce. If in the future you become assigned to any other Client of G&A, this agreement would continue to apply. Your employment relationship with G&A will be active only while you are on assignment to a Client. Clients will be co-employers and third party beneficiaries of this Agreement.

The Agreement includes arbitration-related provisions, under which Mulcahy was to arbitrate any disputes he might have with G&A or with any "Clients to which [he was] assigned":

> To the fullest extent permitted by law, all disputes between you and G&A or between you and all Clients to which you are assigned shall be submitted to binding arbitration pursuant to the Federal Arbitration Act and the American Arbitration Association's National Rules for the Resolution of Employment Disputes. . . .

---

[2] "Client" is used throughout the agreement but is not defined as a term.

Arbitration shall be conducted pursuant to the G&A Alternate Dispute Resolution Plan, a copy of which will be provided to you upon your request.

The main body of the G&A Agreement includes a clause stating that "[t]his Agreement relates only to your employment with G&A."

The referenced Alternate Dispute Resolution Plan includes a Mediation and Arbitration Policy. Several provisions of the Policy address arbitration. According to its terms, the Policy operates between, on the one hand, "G&A Partners and its client companies (hereinafter referred to as 'Company')" and, on the other, "present and former employees (hereinafter referred to as 'Employee')." It applies to "[a]ll disputes asserted by the Employee against the Company," requiring any such dispute first to go through "direct discussions between the parties if possible" then if still not resolved, through mediation. If mediation does not resolve the dispute, then it proceeds to arbitration, governed by the following terms:

> The Mediation and Arbitration Policy is intended to create an exclusive procedural mechanism for the final resolution of certain types of disputes that any Employee may have against the Company. . . . (The Mediation and Arbitration Policy covers all categories of present and former employees).
>
>  . . . .
>
> If the dispute cannot be resolved through mediation, the Company and the Employee shall submit the dispute to binding arbitration, and not by way of court or jury trial.
>
>  . . . .
>
> This Policy is governed by the Federal Arbitration Act . . . .
>
>  . . . .
>
> The Company's Mediation and Arbitration Policy covers any and all legal or equitable claims that the Employee may assert against the Company, including . . . disputes arising out of or relating to the interpretation or application of this Policy. . . . .

3

The arbitrator shall have the authority to determine and implement the applicable law . . . .

Mediation and binding arbitration shall be the exclusive methods by which the parties may assert claims covered by this Policy against each other and/or the Company's clients who have elected to be bound by this Policy.

 . . . .

The terms of the Company's Mediation and Arbitration Policy are severable.  . . . .

Employment or continued employment after the effective date of the Company's Mediation and Arbitration Policy constitutes consent by the Employee to be bound by this Policy, both during the employment and after termination of employment.

During his Cielo employment, Mulcahy, according to Cielo's co-managing member, "was paid by CRP ATX Acquisitions as Cielo's operating company" until Cielo itself took over operations from CRP, after which Mulcahy was paid by Cielo.  The co-managing member swore that both Cielo and CRP "were clients of G&A."

Also during his employment, according to affidavit testimony by Mulcahy, "opportunities arose whereby [he] could participate in co-ownership of some of the properties that Cielo acquired and would later sell."  According to him, ownership of a given property that Cielo was working on often would be vested in a special-purpose LLC.  According to his affidavit and to documents attached to it, CPG 220 and Third & Shoal were examples of these special-purpose LLCs, and he was granted a 5% Class B Membership Interest in CPG 220 and a 5.5% Class B Membership Interest in Third & Shoal.

In 2018, Cielo terminated Mulcahy's employment.  He sued Cielo and its two principals,[3] and his claims against them were referred to arbitration based on an opinion

---

[3] One of whom is the co-managing member referred to above.

4

and judgment of this Court in the suit. *See generally Cielo Prop. Grp., LLC v. Mulcahy*, No. 03-18-00587-CV, 2019 WL 3023312 (Tex. App.—Austin July 11, 2019, pet. denied) (mem. op.). Exactly what claims Mulcahy raised while in the arbitration is a subject of dispute between him and Appellants here.

While the *Cielo Property Group* appeal, involving Cielo, its principals, and Mulcahy, was pending in this Court, Mulcahy in spring 2019 filed a lawsuit against CPG 220. He alleged that even though "[t]he closing of the property that CPG holds appears to have occurred in August 2018," he "never received the required distribution" owing to his Membership Interest in CPG 220. CPG 220 moved to have all claims and defenses in that suit referred to arbitration, but the trial court denied the motion. In summer 2020, the trial court at CPG 220's request stayed the suit pending the result of the arbitration that ensued after *Cielo Property Group*.

In spring 2021, the arbitrator issued her Final Award. By that time, included as parties to the arbitration were CPG 220, Third & Shoal, and other of the special-purpose LLCs related to Cielo projects. The arbitrator's Final Award, in addition to resolving Mulcahy's claims, whatever they were, resolved counterclaims raised by Cielo, CPG 220, Third & Shoal, and the other arbitrating special-purpose LLCs. The arbitrator in her Final Award ruled that Mulcahy take nothing on his claims and the other parties take nothing on their counterclaims.

Later in 2021, Mulcahy filed this suit, into which the earlier suit against CPG 220 was ordered consolidated. In his February 2024 live pleading in this suit, Mulcahy pleaded claims against CPG 220 and Third & Shoal, alleging that under each LLC's Company Agreement and the documents granting him the Membership Interests, the respective LLC "breached their agreements with Mulcahy by making distributions to other members while intentionally withholding any distributions to" him. He also pleaded entitlement to a writ of mandamus ordering Appellants to

let him inspect their records, and he seeks damages, costs, interest, and attorneys' fees. And he pleaded that the completed arbitration should not bar his claims:

> To the extent that Defendants may seek to rely on a res judicata/collateral estoppel or mootness/accord and satisfaction defense, Plaintiff asserts that any claim at issue was not ripe until after any prior proceeding had concluded. At a minimum, Plaintiff asserts that any claim at issue was not ripe until after any pleadings deadline had passed in any prior proceeding.

Appellants, in light of this allegation, moved the trial court to stay the suit and compel arbitration of all claims and defenses in it. They argued that the arbitration-related provisions of the G&A Agreement, including the incorporated Mediation and Arbitration Policy, require arbitration. They also took the distinct position that those provisions require the arbitrator—not the courts—to make the decision on whether the claims and defenses in the suit are arbitrable. Appellants attached evidence to their motion, and Mulcahy responded to the motion, attaching evidence of his own. The trial court denied Appellants' motion, and they now appeal.

## DISCUSSION

In their sole appellate issue, Appellants contend that the trial court erred by denying their motion to compel arbitration. When, as here, an order denying a motion to compel arbitration does not state the grounds for the denial, we must affirm the order if any of the grounds asserted in the trial court for denying the motion are meritorious. *Boring Co. v. 304 Constr., LLC*, No. 03-23-00394-CV, 2024 WL 2220716, at *4 (Tex. App.—Austin May 17, 2024, no pet.) (mem. op.). And when, also as here, the trial court makes no written findings of fact or conclusions of law in support of its ruling, we are to infer all facts necessary to support the denial order so long as the facts are supported by the evidence. *Id.*

6

Appellants' arguments for why the trial court erred are not only that the claims and defenses in the suit must be arbitrated—that is, that they are "arbitrable"—but also that arbitrability here is a decision for the arbitrator to make, not the courts. The question of whether claims and defenses in a suit are arbitrable is a separate question from which decision-maker—the courts or the arbitrator—is the one to decide whether the claims and defenses are arbitrable. *See TotalEnergies E&P USA, Inc. v. MP Gulf of Mex., LLC*, 667 S.W.3d 694, 701 (Tex. 2023). The who-decides-arbitrability question must be answered before the arbitrability question itself is answered. *See id.*

"A party seeking to compel arbitration must establish [(1)] the existence of a *valid* arbitration agreement and [(2)] that the claims at issue fall within the *scope* of that agreement." *Id.* at 720 (emphases added) (quoting *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018)). "The trial court's determination of the arbitration agreement's validity is a legal question subject to de novo review." *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

### Who Decides Arbitrability Here

Whether arbitrability is decided by the courts or the arbitrator depends on whether arbitrability has been contractually delegated to the arbitrator. *See TotalEnergies E&P USA*, 667 S.W.3d at 701–02; *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 631 (Tex. 2018). Such a delegation is effective only if "the agreement to delegate arbitrability to the arbitrator . . . is 'clear and unmistakable.'" *TotalEnergies E&P USA*, 667 S.W.3d at 702 (quoting *Robinson v. Home Owners Mgmt. Enters., Inc.*, 590 S.W.3d 518, 532 (Tex. 2019)); *accord Jody James Farms*, 547 S.W.3d at 631. If the parties have successfully delegated arbitrability questions to the arbitrator, then the courts must enforce the delegation. *See TotalEnergies E&P USA*,

667 S.W.3d at 702; *Jody James Farms*, 547 S.W.3d at 631. But if they have not, then the courts decide arbitrability. *Jody James Farms*, 547 S.W.3d at 631; *see also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 521 (Tex. 2015) ("[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.' These include questions such as 'whether the parties are bound by a given arbitration clause.'" (quoting *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014))).

Here, Appellants argue that the above-detailed arbitration-related provisions of the G&A Agreement, including those in the incorporated Mediation and Arbitration Policy, require all arbitrability questions to be referred to the arbitrator. Mulcahy disagrees, arguing that the courts should answer all arbitrability questions. His arguments against referring arbitrability to the arbitrator are that Appellants may not enforce the Agreement's arbitration provisions because Appellants are not signatories to that Agreement, any delegation to the arbitrator here is not "clear and unmistakable," and they waived enforcement of the arbitration provisions by their litigation conduct in this suit.

The non-signatory matter is a "validity" matter for the courts to decide. *See G.T. Leach Builders*, 458 S.W.3d at 524 ("[Non-signatory] contention raises questions about 'the existence of a valid arbitration clause between specific parties and is therefore a gateway matter for the court to decide.'" (quoting *In re Rubiola*, 334 S.W.3d 220, 224 (Tex. 2011) (orig. proceeding))). "Even when the party resisting arbitration is a signatory to an arbitration agreement, questions related to the existence of an arbitration agreement with a non-signatory are for the court, not the arbitrator." *Jody James Farms*, 547 S.W.3d at 632; *see also TotalEnergies E&P USA*, 667 S.W.3d at 720–21 (judicially resolving "validity" inquiry even though parties' agreement had

8

clearly and unmistakably delegated arbitrability issues to arbitrator and thus requiring remaining, arbitrability "scope" issues to be referred to arbitrator).

Here, the contractual arbitration-related provisions are all silent about whether Mulcahy must arbitrate with non-signatories who are not the kind of Clients that the G&A Agreement and incorporated Policy refer to. Therefore, so long as Appellants are not the kind of Clients that the contractual terms apply to, then the Agreement did not clearly and unmistakably delegate the arbitrability decision on the claims and defenses between Mulcahy and Appellants to the arbitrator, and thus the courts must answer that question. This case is largely controlled by *Jody James Farms*, whose reasoning we quote here with appropriate alterations to substitute the parties and facts here for those there:

> The involvement of a non-signatory is an important distinction because a party cannot be forced to arbitrate absent a binding agreement to do so. The question is not whether [Mulcahy] agreed to arbitrate with someone, but whether a binding arbitration agreement exists between [Mulcahy] and [Appellants]. What might seem like a chicken-and-egg problem is resolved by application of the presumption favoring judicial determination. A contract that is silent on a matter cannot speak to that matter with unmistakable clarity, so an agreement silent about arbitrating claims against non-signatories does not unmistakably mandate arbitration of arbitrability in such cases.
>
> To the extent [the G&A Agreement] expressed any intent to arbitrate arbitrability, it did so only with respect to [Mulcahy, G&A, and certain Clients]. . . . .
>
> Given the absence of clear and unmistakable evidence that [Mulcahy] agreed to arbitrate arbitrability in disputes with non-signatories [who are not covered "Clients"], compelled arbitration cannot precede a judicial determination that an agreement to arbitrate exists.

*See* 547 S.W.3d at 632–33.[4]

---

[4] Appellants suggest that *TotalEnergies E&P USA, Inc. v. MP Gulf of Mexico, LLC* undermines this reasoning from *Jody James Farms, JV v. Altman Group, Inc.*, but we disagree. The Court in *TotalEnergies E&P USA* recognized that the parties then before it were all signatories

As for whether under the G&A Agreement Appellants are "Clients to which [Mulcahy was] assigned," the record here includes evidentiary support for a fact finding that Appellants are not Clients to which he was assigned. *See Boring*, 2024 WL 2220716, at *4 (when trial court makes no written findings of fact or conclusions of law in support of denial of motion to compel arbitration, reviewing court infers all facts necessary to support denial order so long as the facts are supported by evidence). Mulcahy in his affidavit swore: "Pursuant to my agreements with G&A, I was hired to perform services for G&A's Client, which was identified as CRP ATX Acquisitions. At no time did G&A ever assign me Third & Shoal or CPG 220 as a client, as these entities were only holding companies for interests."

Much the same is true under the terminology used in the Mediation and Arbitration Policy. The provisions there apply to "G&A Partners and its client companies" or to "Company's clients who have elected to be bound by this Policy." Mulcahy's affidavit testimony provides support for a fact finding that neither Appellant was such a client.

Appellants advance three arguments for why the arbitrator must decide arbitrability, but we are unpersuaded. First, they rely on our opinion in *Cielo Property Group*. But that opinion did not decide *who* should decide arbitrability; it decided arbitrability itself, concluding that all claims there were arbitrable, which is a *judicial* decision on arbitrability, not an arbitral one. *See Cielo Prop. Grp.*, 2019 WL 3023312, at *1–3.

Appellants next argue that our sister court's reasoning in *Robinson v. Home Owners Management Enterprises* would require arbitrability here to be referred to the arbitrator. *See*

---

to the relevant agreements while the parties in *Jody James Farms* included some who were not signatories to the relevant agreements. *See* 667 S.W.3d 694, 703 & n.10 (Tex. 2023) (citing 547 S.W.3d 624, 631–32 (Tex. 2018)).

*generally* No. 02-20-00215-CV, 2021 WL 924839 (Tex. App.—Fort Worth Mar. 11, 2021, pet. denied) (mem. op.). Yet that opinion was not deciding who-decides-arbitrability but arbitrability itself. The court there concluded that the arbitrator should decide a procedural matter supporting arbitrating, the *res judicata* effect of a prior arbitral award. *See id.* at *13–15. In doing so, the court relied on authorities recognizing that applying the affirmative defense of *res judicata* to a plaintiff's claims is an exercise in deciding the merits of the case. *See id.* at *7, *8 (first citing *Hancock Fabrics, Inc. v. Rowdec, LLC*, 126 F. Supp. 3d 784, 790 (N.D. Miss. 2015), then quoting *W. Dow Hamm III Corp. v. Millennium Income Fund, L.L.C.*, 237 S.W.3d 745, 755 (Tex. App.— Houston [1st Dist.] July 12, 2007, no pet.)).[5] Under *TotalEnergies E&P USA*'s framework for arbitrability disputes, the underlying merits of a case represent a question distinct from arbitrability and a question distinct from who decides arbitrability. *See* 667 S.W.3d at 701. Applying that framework to *Robinson* leads us to conclude that *Robinson* was not answering whether the court or arbitrator should decide arbitrability—the *court* was deciding it.

Finally, Appellants rely on the terms of the G&A Agreement and incorporated Policy. But, as discussed above, those terms cannot have clearly and unmistakably delegated to the arbitrator arbitrability disputes involving a non-signatory who is not a covered Client because they are silent about arbitration with non-signatories who are not the kinds of Clients that the contractual language refers to. *See Jody James Farms*, 547 S.W.3d at 632–33.

---

[5] *See also Howell v. Texas Dep't of Crim. Just.*, 28 S.W.3d 125, 127 n.3 (Tex. App— Texarkana 2000, no pet.) ("Res judicata is an affirmative defense under Tex. R. Civ. P. 94 and should be treated as a plea in bar, which reaches the merits of the case. . . . The proper procedure in sustaining a plea of res judicata is to render a take-nothing judgment in favor of a defendant." (internal citations omitted) (citing *Walker v. Sharpe*, 807 S.W.2d 442, 446, 447 n.2 (Tex. App.— Corpus Christi–Edinburg 1991, no writ) (citing *Texas Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967)))).

In all then, we hold that the portion of the trial court's order denying the motion to compel arbitration in which the court ruled that the courts rather than the arbitrator should decide the arbitrability of the parties' disputes was not error. The trial court thus was charged with deciding whether a valid agreement to arbitrate exists between Appellants and Mulcahy before any issue may be referred to arbitration. *See id.* at 633. Having answered who-decides-arbitrability in favor of judicial determination, we now turn to the arbitrability question itself.

### *Arbitrability of the Claims and Defenses Here*

As mentioned above, the arbitration proponent bears the burden to establish both "validity" and "scope"—a valid arbitration agreement binding the parties and that the scope of that agreement encompasses the parties' dispute. *See TotalEnergies E&P USA*, 667 S.W.3d at 720. The arbitration agreement that Appellants put forward is still the G&A Agreement and incorporated Policy, but now the "clear and unmistakable" standard for arbitrability delegations no longer applies. Instead, "[w]ho is bound by an arbitration agreement is normally a function of the parties' intent, as expressed in the agreement's terms." *See Jody James Farms*, 547 S.W.3d at 633. And Appellants indeed base their validity arguments on the arbitration-related terms in the G&A Agreement and Policy to get around the non-signatory problem identified above. *See id.* (noting that whether non-signatory may enforce arbitration agreement is "validity" question). They also argue that this Court in *Cielo Property Group* decided the validity question raised by this case against Mulcahy's position.[6]

---

[6] Appellants have not raised other of the theories that support compelling arbitration even when the arbitration proponent is a non-signatory, for example, incorporation by reference, assumption, agency, alter ego, equitable estoppel, or third-party beneficiary. *See Jody James Farms*, 547 S.W.3d at 633.

12

We conclude, for the following reasons, that neither the contractual terms nor *Cielo Property Group* establishes a valid agreement to arbitrate binding Mulcahy to Appellants. Therefore, Appellants fall under the default rule that they, as non-signatories to the G&A Agreement, cannot compel Mulcahy to arbitrate under the Agreement. *See G.T. Leach Builders*, 458 S.W.3d at 524 ("As a general rule, 'an arbitration clause cannot be invoked by a non-party to the arbitration contract.' '[The] policy favoring arbitration is strong, but it alone cannot authorize a non-party to invoke arbitration.'" (internal citation omitted) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 532 (5th Cir. 2000) (Dennis, J., dissenting))).

At every turn in the G&A Agreement and Policy, the arbitration-related terms concern only disputes between, on the one hand, Mulcahy and, on the other, either G&A or certain Clients. *See Jody James Farms*, 547 S.W.3d at 633–34 (explaining contractual terms that similarly required arbitration only between named parties and not also with non-signatories, despite same terms' broad scope regarding disputes that were covered). As we said above, the record allowed the trial court reasonably to find that neither Appellant here is such a Client. Therefore, no matter how broad the scope of the arbitration-related terms concerning which disputes are covered, the contractual language does not create a valid arbitration agreement binding Mulcahy to arbitrate with Appellants. *See id.* at 634 ("The parties must arbitrate '[a]ll disputes' within the arbitration agreement except pure 'policy or procedure interpretation[s],' but those disputes only fall within the scope of the agreement if there is a valid arbitration agreement in the first instance.").

As for *Cielo Property Group*, the validity decision there was based on the fact that one of the appellants was named as a third-party beneficiary of the G&A Agreement. *See* 2019 WL 3023312, at *1, *2. Then for the other two appellants, because Mulcahy's claims against them were merely ancillary to his claims against the first appellant but were still factually

13

intertwined with them, it was appropriate to refer those claims to arbitration as well. *See id.* at *3. By contrast here, neither Appellant is a named third-party beneficiary in the G&A Agreement, and without a party here with a valid arbitration agreement with Mulcahy, the ancillary-claims reasoning from *Cielo Property Group* is inapplicable.[7] Therefore, *Cielo Property Group* does not require that we decide the validity question in this appeal against Mulcahy's position.

Despite the lack of a valid arbitration agreement to bind Mulcahy to arbitrate with them, Appellants raise still one more ground for compelling arbitration here: their affirmative defense of *res judicata*. In advancing that affirmative defense, they argue that Mulcahy submitted to the arbitrator the same claims that he pleads against them in this suit. Mulcahy disagrees that he did so, pointing to this language in his arbitration third amended statement of claims[8]:

> Cielo thereafter was refusing to provide Mr. Mulcahy with the ownership interest to which he was promised, which included all active projects under Mr. Mulcahy's asset management role . . . . In accordance with oral and written agreements between Mulcahy and Cielo, Mr. Mulcahy is entitled to receive . . . distributions from the sale of these propert[ies]. To be clear, Mr. Mulcahy is *not* seeking damages in this lawsuit for the ownership interests Mr. Mulcahy has under separate contracts, and specifically, CPG 220 Holdings 2014, LLC[ and] CPG 208 Nueces Holdings, LLC.

Appellants argue that if Mulcahy submitted his claims in this lawsuit to the arbitrator, then the arbitrator must decide the *res judicata* effect, if any, of her final award on Mulcahy's purportedly identical claims in this lawsuit. Appellants rely on the *Robinson* opinion from our sister court that we mentioned above.

---

[7] Appellants rely on other language from *Cielo Property Group*, but that language was dealing with "scope" questions rather than the "validity" question.

[8] His live-pleading-like document in the arbitration.

Yet in *Robinson*, our sister court well explained an analytical framework for categorizing the *res judicata*-arbitrability question that Appellants raise here, and that framework shows that Appellants' *res judicata*-arbitrability question does not affect our "validity" conclusion that Mulcahy is not bound by any valid agreement to arbitrate with Appellants. Our sister court began, "The question that we confront is for a claim referred to arbitration, which of the two decision makers—the trial court or the arbitrator—decides whether res judicata bars a claim." *Robinson*, 2021 WL 924839, at *4. It then described the framework of "substantive arbitrability" versus "procedural arbitrability," questions about the first of which are generally for courts and questions about the second of which are generally for arbitrators. *See id.* It noted that the Supreme Court of Texas has used the same framework and—important for Mulcahy and Appellants— highlighted reasoning by the Supreme Court that shows that whether *res judicata* requires parties to arbitrate does not affect the "validity" question about arbitrability:

> Our supreme court also quoted from another United States Supreme Court opinion to explain the distinction between substantive and procedural questions:
>
> > On the one hand, courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about "arbitrability." These include questions such as "*whether the parties are bound by a given arbitration clause[]*" or "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy."
> >
> > On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural *preconditions for the use of arbitration*. These procedural matters include claims of "waiver, delay, or a like defense to arbitrability." And they include the satisfaction of "prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate."

*Id.* at *5 (emphases added) (quoting *G.T. Leach Builders*, 458 S.W.3d at 521). Our sister court went on to explain that *res judicata* is a procedural matter supporting arbitrating. *See id.* at *5–9. Therefore, it is within the "procedural arbitrability" part of the substantive–procedural framework and does not affect the validity analysis we must conduct here given the non-signatory problem.

All of which leaves us with the default rule applying to Appellants—they are non-signatories to the arbitration agreement that they raise and thus may not enforce it to require Mulcahy to arbitrate with them. *See G.T. Leach Builders*, 458 S.W.3d at 524. Because the proponent of arbitration must prevail on both validity and scope, *see TotalEnergies E&P USA*, 667 S.W.3d at 720, and because Appellants have not prevailed on validity, the trial court did not err by denying their motion to compel arbitration. We thus overrule their sole appellate issue.

## CONCLUSION

We affirm the trial court's order.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: February 14, 2025

16